1        140.

2        On or about that same day, Noyes' mother contacted Lydum and requested her to make

3    things right after Noyes was kicked off the team. Lydum did not respond.

4        141.

5        On or about that same day, plaintiff Hopkins' father also contacted the Board of Trustees

6    about WOU revoking players' scholarships and received no response.

7                              **INJURY**

8        142.

9        The coaches and WOU's unlawful conduct had a profound effect on plaintiffs

10    emotionally. Some plaintiffs would go home exhausted emotionally, physically, and mentally.

11        143.

12        The physical abuse also led to social isolation. Plaintiffs socially withdrew from their

13    friends because they were too tired to hang out, participate in any social outing because they felt

14    too drained, and stopped going home to visit their parents.

15        144.

16        The over-exhaustion and physical punishment also led to other physical manifestations

17    and symptoms such as weight loss, lack of sleep, hair loss, and eating disorders.

18        145.

19        Arnold is staying at WOU. She has three years of eligibility remaining, but because she

20    was terminated from the team, she cannot play basketball while at WOU. Arnold had an $8,000

21    athletic scholarship, which was withdrawn by WOU after she was terminated from the team.

22    She also incurred $14,505 in medical expenses due to her knee injury and surgery.

23    /////

PAGE 40 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

146.

Defendants' conduct has caused plaintiff Arnold economic damages in an amount to be determined at trial, but currently estimated to be $22,505 for loss of her scholarship and medical expenses.

147.

Arnold lost 10-15 pounds from the excessive running and not being able to eat proper meals, as well as due to her anxiety. Arnold was exhausted the entire season – emotionally, physically, and mentally. She would come home from practice and lay on the floor for hours unable to move. She called her parents and cried while telling them how exhausted she felt in every aspect of her life. Although Arnold has three years of eligibility remaining, the treatment from these coaches has driven her to the point where she does not want to pick up a basketball ever again. Countless hours in the gym, years of club basketball, and huge tournaments, missed dances, and huge sacrifices her and her family made all seem like it was for nothing. Her mental health has extremely suffered from repeatedly seeking help but not being taken seriously. Stepping away from basketball – her first love – is devastating. Giving up basketball, a huge part of her life, simply because she spoke up, is crushing to her spirit. She has lost her identity as an athlete and is struggling to transition form an athlete to normal life.

148.

Defendants' conduct has caused plaintiff Arnold noneconomic damages in an amount to be determined at trial, but estimated to be $3,000,000.

149.

Baker was a redshirt freshman with three years of eligibility left. Baker had a $6,000 athletic scholarship, which she lost when defendants failed to protect her from abuse, retaliated

PAGE 41 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

Exhibit A
Page 282 of 417

1   against her, and constructively discharged her from the team, causing her to transfer to another

2   university. Baker will be playing basketball at the University of Mount Saint Vincent this fall,

3   where she will be paying more in tuition. The difference in tuition is $29,964 per year.  She has

4   also had mental health counseling as a result of defendants' actions and has incurred counseling

5   expenses in an estimated amount of $2,400 and will incur future counseling costs.

6                                              150.

7        Defendants' conduct has caused plaintiff Baker economic damages in an amount to be

8   determined at trial, but currently estimated to be $91,992, in the form of the loss of scholarship

9   and/or increased tuition, as well as future counseling costs in an amount to be determined.

10                                             151.

11       Playing basketball at WOU was a dark spot on Baker's basketball career. Peatross and

12  Marlow took away her confidence, her voice, and what she loves most – basketball. Baker

13  learned from Coaches Peatross and Marlow the person she never wants to be – and that is the

14  coaches she had at WOU. Baker lost 15 pounds due to excessive exercise and her inability to eat

15  due to anxiety. Baker was too exhausted and drained to go to class, do schoolwork, and would

16  cram for everything at the last minute when there were deadlines. Baker developed severe

17  anxiety due to the extreme physical, verbal, and emotional distress the coaches placed on her

18  during the season. She suffered from severe panic attacks. Baker lost contact with her friends

19  because she was too exhausted to reach out and too sad to continue talking to many of her

20  friends. She isolated herself in her room and felt like nobody understood how hard it was for her.

21                                             152.

22       Defendants' conduct has caused plaintiff Baker noneconomic damages in an amount to

23  be determined at trial, but estimated to be $3,000,000.

PAGE 42 – COMPLAINT

**Shenoa Payne Attorney at Law PC**
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

**KAFOURY & McDOUGAL**
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

153.

Dawkins was a redshirt sophomore with two years of eligibility remaining. Dawkins has transferred to Northern Illinois University, where she will be playing basketball in the fall. Dawkins experienced significant emotional distress due to the coaches' abusive tactics and retaliatory conduct. She lost 15 pounds due to stress and overexertion, suffered hair loss, and developed an eating disorder from which she still suffers. Defendants' conduct caused Dawkins anxiety, depression, and social isolation. Because trusted adults harmed her and failed to protect her, she also has difficulty trusting others. Although she is able to play basketball at a new school, Dawkins is now thousands of miles away from home and away from her support system, further suffering from isolation and depression. Dawkins is in the process of getting into mental health counseling and will incur counseling expenses as a result of defendants' actions.

154.

Defendants' conduct has caused plaintiff Dawkins economic damages in an amount to be determined at trial.

155.

Defendants' conduct has caused plaintiff Dawkins noneconomic damages in an amount to be determined at trial but estimated to be $3,000,000.

156.

Hopkins was a freshman guard with three years of eligibility remaining. She had an athletic scholarship for $6,000, which was withdrawn when she was terminated from the team. Hopkins is transferring to George Fox University, where she was unable to obtain an athletic scholarship because of the late entry into the portal. She will pay approximately $25,000 more per year in tuition for the next three years and is incurring commuting costs of approximately

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   $5,000 per year. She has also had mental health counseling as a result of defendants' actions and

2   will have counseling in the future.

3                                    157.

4        Defendants' conduct has caused plaintiff Hopkins economic damages in an amount to be

5   determined at trial but currently estimated to be $96,000, in the form of loss of scholarships,

6   and/or the cost of increased tuition, as well as future counseling expenses in an amount to be

7   determined.

8                                    158.

9        Hopkins lost 10 pounds from excessive running. Hopkins lost sleep due to anxiety over

10  what would happen the next day, and her school year was consumed with pain and heartache.

11  Hopkins was on the phone with her parents for hours to help her get through the hours after the

12  abusive practices. In addition, Hopkins suffered serious reputational harm and anxiety due to

13  Peatross' slanderous and false police report and misrepresentations about her to the police and to

14  campus personnel. Hopkins felt helpless and alone. She also fears how Peatross' false report and

15  lies about her character will continue to affect her future. She has lost all trust in adults and a

16  system that was supposed to protect her, but instead retaliated against her, protected her abusers,

17  and took her basketball career away from her.

18                                   159.

19       Defendants' conduct has caused plaintiff Hopkins noneconomic damages in an amount to

20  be determined at trial but estimated to be $4,000,000.

21                                   160.

22       A. McClave was a junior guard with one year of eligibility remaining. A. McClave

23  suffered a serious knee injury due to the intentional injury caused by Coach Marlow. She has

PAGE 44 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    medical bills that, to date, are estimated at $22,000.00. She also had an athletic scholarship for

2    $10,000, which was withdrawn after she was terminated from the team. A. McClave is staying at

3    WOU for her senior year, which is the best decision for her academically. However, because she

4    was terminated from the team, she cannot play basketball.  A. McClave has also had mental

5    health counseling as a result of defendants' actions, with counseling bills currently estimated at

6    $2,280.

7                                             161.

8         Defendants' conduct has caused plaintiff A. McClave economic damages in an amount to

9    be determined at trial but currently estimated to be in excess of $34,280, in the form of past and

10   future medical and counseling expenses, and lost tuition and scholarships.

11                                            162.

12        Defendants' conduct has caused A. McClave serious emotional distress. A. McClave

13   suffered from depression, anxiety, humiliation, stress, and constant fear. She cried nearly every

14   day of the season. Her self-esteem suffered due to the bullying and retaliation she experienced

15   from the coaches. There were points in the season where she thought about quitting, harming

16   herself and even struggled with suicidal ideation. She suffered from panic attacks, would shake,

17   and couldn't breathe. Her anxiety was so bad that she would struggled to keep her food down

18   without vomiting. Her coaches' comments about her body triggered negative body images about

19   herself. She lost approximately 22 pounds. She would sleep nearly all day outside of practice.

20   She lost nearly all enjoyment in life. She withdrew from her friends and social life and became

21   extremely isolated. She felt it was the darkest time in her life. A. McClave really struggled in

22   school and was constantly emailing professors to ask for extensions. A. McClave has been

23

PAGE 45 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    stripped of the one thing in life that made her feel most like herself. She grieves the loss of

2    basketball and all it meant to her.

3                                      163.

4        Defendants' conduct has caused plaintiff A. McClave noneconomic damages in an

5    amount to be determined at trial but estimated to be $3,000,000.

6                                      164.

7        Defendants' conduct has caused C. McClave serious emotional harm. C. McClave was a

8    fifth-year senior guard during the 2023-2024 season with no remaining eligibility. Despite the

9    early termination of the season, C. McClave was name All-GNAC Honorable Mention, finishing

10   the season fourth in the conference in scoring at 17.0 PPG,[1] tenth in assists, second in steals, and

11   fifth in minutes per game.[2] Because of the cancellation of the season, C. McClave lost out on the

12   opportunity to obtain higher honors of first team or a chance at player of the year in the

13   conference. C. McClave has no remaining eligibility left, and defendants robbed her of her

14   experience of her last year of basketball. C. McClave was so stressed during the season that she

15   would get sick to her stomach, be riddled with anxiety, would wake up at 3:00 AM, and not be

16   able to get back to sleep. C. McClave became extremely depressed, feeling that she had confided

17   to trusted adults without anyone helping. C. McClave was defeated, tired, and stressed due to the

18   coaches' abusive tactics, their retaliatory conduct, and WOU officials' failure to correct it.

19   /////

20   /////

21

22   _____

[1] PPG refers to an average Points Per Game.

23   [2] FG refers to Field Goal Percentage, which measures the success rate of a player's field goals.
     Field goals include any two-point, or three-point shots taken during live play.

PAGE 46 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

165.

Defendants' conduct has caused plaintiff C. McClave noneconomic damages in an amount to be determined at trial, but estimated to be $3,000,000.

166.

Noyes was a junior forward with one year of eligibility remaining. Noyes had an athletic scholarship worth $12,000, which WOU withdrew after it terminated her from the team. Noyes is staying at WOU, which is the best decision for her academically. However, because she was terminated from the team, she cannot continue to play basketball.

167.

Defendants' conduct has caused plaintiff Noyes economic damages in an amount to be determined at trial but currently estimated to be $12,000 for her lost scholarship.

168.

Noyes lost 15 pounds due to excessive cardio exercise and not refueling her body properly as a result of exhaustion and anxiety. Noyes complained to her professors through the school year, requiring extensions on assignments because basketball was taking all of her energy, and she was struggling. Despite her professors being accommodating, Noyes stopped attending class most of the winter quarter and part of the spring quarter because she was extremely stressed. She dropped one class in the spring because she was going to fail, and Noyes was forced to turn in poorly done assignments because she lacked the mental capacity to do a good job. Going through the season had a profound effect on Noyes' mental health. It was the most toxic, uncomfortable, and degrading environment that she had ever experienced in her entire basketball career. Noyes was filled with such anxiety about what would happen at practice the next day she would throw up and not be able to sleep nights, knowing plaintiffs would have to

PAGE 47 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    run the next day for punishment. She cried after practice weekly and became extremely

2    depressed. Noyes regretted transferring to WOU and felt trapped because she couldn't afford to

3    lose her scholarship. She contemplated suicide mid-season because she felt so suffocated and

4    miserable, but knew she had to stay. Noyes felt she had no control over her life and wanted to

5    take back her power. These thoughts overcame her as the season started to get progressively

6    worse. After Noyes was terminated from the team, she was reported to the WOU's counseling

7    center twice as a student of concern that might self-harm. Noyes shut down and would become

8    short with her family and friends. She withdrew from everyone who wasn't on the team because

9    nobody else could understand the toll it was taking on her and it led to a break-up with her

10   significant other. Losing the sport that she worked for her whole life is extremely painful to

11   Noyes and breaks her hearts. She feels she has lost a piece of her core and identity.

12                                    169.

13       Defendants' conduct has caused plaintiff Noyes noneconomic damages in an amount to

14   be determined at trial but estimated to be $3,000,000.

15                                    170.

16       Ramos was a junior guard with one year of eligibility remaining. Ramos lost 15-20

17   pounds and has trouble sleeping due to stress and anxiety, and Ramos was getting hives and had

18   to take Benadryl for sleep almost every night because of stress. Ramos sustained a concussion

19   during one of the "kill or be killed" practices.  Ramos' schoolwork suffered; she started to do

20   poorly on assignments and fell behind in school. Ramos called her mother nearly every night,

21   telling her that she couldn't take it anymore. Ramos found herself taking her emotions out on her

22   family and friends and isolated herself from her friends and often stayed in her room. Ramos is

23   taking a year off from the university because she needs a break from the emotional stress of the

PAGE 48 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  last year. Ramos is unsure whether she will return to basketball after the negative and toxic

2  experiences she had at Western Oregon University. Ramos is extremely upset because she

3  recognizes as a young Native American woman, playing basketball was dream that not a lot of

4  kids in her culture get to realize.

5                                   171.

6      Defendants' conduct has caused plaintiff Ramos noneconomic damages in an amount to

7  be determined at trial but estimated to be $3,000,000.

8                                   172.

9      Tu'ivai was a sophomore forward with two years of eligibility left. Due to a season

10  ending injury as a result of the physical abuse perpetuated by Peatross and Marlow, Tu'ivai did

11  not play any games during the 2023-2024 season. After Tu'ivai was terminated from the team,

12  her $10,000 athletic scholarship was withdrawn, and she has two years of eligibility remaining.

13  Basketball was Tu'ivai's life, escape, and a way of channeling her emotions. Tu'ivai has tried

14  overcoming her injury but has been unable to and may never play basketball again. Defendants'

15  conduct has caused Tu'ivai significant emotional distress. She cried every night because of how

16  sore her body was before she got injured, and because of her injury, suspension, and abuse from

17  the coaches. During her suspension, Tu'ivai missed critical parts of team bonding, suffered from

18  social isolation, fell into a deep depression with thoughts of suicide, her grades suffered, and she

19  was too afraid to talk to anyone about it. Tu'ivai lost the love of the game because Peatross and

20  Marlow made the sport more anxiety driven and less lovable and enjoyable. Basketball was

21  Tu'ivai's love and her escape – a way of letting out her anger and her emotion. She grew up

22  playing with her sisters, and she feels that defendants took that from her. The abusive tactics

23  affected her mental health, and no one listened to them and it just got worse. She suffered from

PAGE 49 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  depression and anxiety, lack of sleep, social isolation, loss of enjoyment of life, and suicidal

2  ideation. Her school work suffered tremendously and her grades suffered as a result.

3                                    173.

4      Defendants' conduct has caused plaintiff Tu'ivai economic damages in an amount to be

5  determined at trial.

6                                    174.

7      Defendants' conduct has caused plaintiff Tu'ivai noneconomic damages in an amount to

8  be determined at trial but estimated to be $3,000,000.

9                                    175.

10     Plaintiffs have mitigated their damages.

11                          **FIRST CLAIM FOR RELIEF**

12              **42 U.S.C. § 1983 – Speech and Petition Clause**
                          **On Behalf of All Plaintiffs**
13          **Against Defendants Peatross, Marlow, Lydum, Larson, and Peters**

14                                   176.

15     Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

16                                   177.

17     Defendants were at all relevant times acting under the color of state law.

18                                   178.

19     Plaintiffs' complaints constituted Constitutionally protected activities of speech and/or

20  petitioning the Government.

21                                   179.

22     Defendants punished and/or otherwise retaliated against plaintiffs for reporting,

23  opposing, and speaking out against ongoing abusive coaching tactics by taking actions against

PAGE 50 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2ᴺᴰ Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  plaintiffs that would lead ordinary student athletes in plaintiffs' position to refrain from

2  complaining about abusive coaches in order to remain on the team.

3                                    180.

4        Plaintiffs' protected constitutional activity was a substantial or motivating factor in

5  defendants' adverse and retaliatory actions toward plaintiffs.

6                                    181.

7        It is clearly established law that school officials may not retaliate against student-athletes

8  based on their protected speech.

9                                    182.

10       It is clearly established law that protected speech includes complaints and reports to a

11 university about an abusive coach.

12                                   183.

13       Defendants' conduct has caused plaintiffs economic and noneconomic damages.

14                                   184.

15       Plaintiffs are entitled to attorney fees, costs, and disbursements pursuant to 42 U.S.C. §

16 1988(b).

17                        **SECOND CLAIM FOR RELIEF**

18                     **Intentional Infliction of Emotional Distress**
                           **On Behalf of All Plaintiffs**
19              **Against Defendants WOU, Peatross, and Marlow**

20                                   185.

21       Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

22 /////

23 /////

PAGE 51 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1                                    186.

2          From January 3, 2024, until the season ended on February 12, 2024, defendants Peatross

3   and Marlow, intended to cause plaintiffs severe emotional distress.

4                                    187.

5          Defendants did in fact cause plaintiffs severe emotional distress.

6                                    188.

7          Defendants' conduct was an extraordinary transgression of the bounds of socially

8   tolerable behavior.

9                                    189.

10         Peatross made an intentionally false and outrageous claim to the police and WOU

11  officials that Hopkins assaulted her and caused her serious injury, knowing it was false and

12  lacking any reasonable grounds to believe the accusation as true.

13                                   190.

14         Defendants Peatross and Marlow were at all times acting within the course and scope of

15  their employment for defendant WOU and WOU is vicariously liable for their actions. Plaintiffs

16  also maintain this action against Peatross and Marlow individually pursuant to ORS 30.265(4).

17                                   191.

18         Defendants' conduct has caused plaintiffs economic and noneconomic damages.

19  /////

20  /////

21  /////

22  /////

23  /////

PAGE 52 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

**THIRD CLAIM FOR RELIEF**

**Use of Police with Intent to Harm**
**ORS 30.845**

**On Behalf of Plaintiff Hopkins**
**Against Defendants WOU and Jessica Peatross**

192.

Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

193.

On or about February 12, 2024, Defendant Peatross knowingly caused a police officer to arrive at the WOU campus in Monmouth to contact plaintiff Hopkins.

194.

Defendant Peatross acted with the intent to cause Plaintiff Hopkins to feel harassed, humiliated or embarrassed, and/or damage her reputation or standing within the WOU community and/or the community at large.

195.

Defendant Peatross was at all times acting within the course and scope of her employment for defendant WOU and WOU is vicariously liable for her actions. Plaintiff Hopkins also maintains this action against defendant Peatross individually pursuant to ORS 30.265(4).

196.

Defendants' conduct was a but-for cause of plaintiff Hopkins's harm.

197.

Plaintiff Hopkins is entitled to emotional distress damages or a minimum of statutory damages in the amount of $250.

PAGE 53 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1          198.

2     Plaintiff is entitled to attorney fees, costs, and disbursements pursuant to ORS 30.845.

3                          **THIRD CLAIM FOR RELIEF**

4                                **Negligence**
                          **On Behalf of All Plaintiffs**
5                **Against Defendants WOU, Peatross, and Marlow**

6          199.

7     Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

8          200.

9     Defendants Peatross and Marlow had a duty to act with reasonable care to not expose

10  plaintiffs to a foreseeable risk of harm.

11         201.

12    From January 3, 2024, to February 12, 2024, Peatross and Marlow were negligent in

13  multiple ways, including but not limited to the following:

14       a.     Failing to take reasonable steps to ensure the physical health and safety of

15              plaintiffs.

16       b.     Failing to take reasonable steps to avoid physically injuring plaintiffs.

17       c.     Making physical contact with plaintiffs in a way that was not reasonable under the

18              circumstances.

19       d.     Requiring plaintiffs to engage in physical activity that was not reasonable under

20              the circumstances.

21       e.     Holding unreasonable practices in length and number.

22       f.     Organizing workouts at times that were not reasonable under the circumstances.

23       g.     Using physical workouts, running, and practices as punishment.

PAGE 54 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

h.   Endangering plaintiffs needlessly.

i.   Violating NCAA Bylaw 17.1.6., which defendants knew or should have known about by allowing or requiring the players to engage in excessive, and unreasonably lengthy, practices and using physical activity as punishment.

202.

Defendants' negligence was the but-for cause of plaintiffs' physical injuries.

203.

Defendants Peatross and Marlow were at all times acting within the course and scope of their employment for defendant WOU and WOU is vicariously liable for their actions. Plaintiffs also maintain this action against Peatross and Marlow individually pursuant to ORS 30.265(4).

204.

Defendants' conduct has caused plaintiffs economic and noneconomic damages.

**FOURTH CLAIM FOR RELIEF**

**Negligent Retention and Supervision**
**On Behalf of All Plaintiffs**
**Against WOU**

205.

Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

206.

Beginning on November 22, 2023, defendant WOU, by or through its agents knew plaintiffs were subjected to unlawful abuse.

207.

WOU is directly liable for its own negligence. WOU had an obligation and duty to exercise reasonable care to protect its collegiate athletes against excessive practices, bullying,

PAGE 55 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  dehydration, forced practicing while ill, disregarding of injuries, and other serious and

2  foreseeable risks to plaintiffs' health and safety.

3                                            208.

4      Beginning on January 3, 2024, WOU was negligent in retaining Peatross and Marlow by

5  failing to conduct a reasonable due diligence investigation upon receiving complaints and being

6  made aware that Peatross and Marlow engaged in abusive coaching tactics resulting in physical

7  and mental injuries to players at WOU, prior abuse at Salem University, and had lied on their

8  resumes and lacked requisite qualifications.

9                                            209.

10     Had WOU conducted a reasonable due diligence investigation, WOU would have

11 discovered that Peatross and Marlow were not qualified for retention, and that the coaches had a

12 pattern of abuse against players on their team, and that there was a foreseeable risk of harm to

13 plaintiffs.

14                                           210.

15     WOU failed to reasonably supervise Peatross and Marlow, despite several complaints of

16 verbal, physical, and mental abuse and retained the coaches even after being made aware of the

17 actions of their abusive conduct.

18                                           211.

19     WOU failed to act reasonably in its investigation of the abuse and negligently retained

20 Coaches Peatross and Marlow in light of the knowledge it had obtained from plaintiffs and their

21 parents.

22 /////

23 /////

PAGE 56 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1        212.

2        WOU failed to be responsive and instead negligently failed to protect their collegiate

3    athletes from abuse, neglect, or other forms of maltreatment.

4        213.

5        Defendants' negligent supervision and retention was a but-for cause of plaintiff's harm

6    and plaintiffs are entitled to economic and noneconomic damages.

7                              **PRAYER FOR RELIEF**

8        WHEREFORE, plaintiff prays that this Court provide trial by jury and award the

9    following relief:

10       1.      An order applicable to plaintiffs still attending WOU that:

11              a.      Requires defendant WOU to reinstate plaintiffs who have not transferred

12                      to other teams and who have remaining eligibility to the WOU basketball

13                      team;

14              b.      Requires defendant WOU to immediately terminate Peatross's and

15                      Marlow's employment;

16              c.      Requires defendant WOU to implement comprehensive training on the

17                      prevention of abuse, harassment, and retaliation for all coaching staff and

18                      athletic department employees;

19              d.      Requires defendant WOU to appoint an independent monitor to oversee

20                      the athletics department to ensure compliance with player safety for a

21                      period of two years;

22              e.      Requires defendant WOU to allow the independent monitor to conduct a

23                      thorough investigation and report the findings to the Oregon Department

PAGE 57 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

of Education and the NCAA to ensure that all policies and procedures are revised to prevent future occurrences of abuse by coaches and retaliation for reports of abuse by coaches;

    f.    Requires defendant WOU to provide counseling and support services to current and former players by the abusive conduct;

    g.    Requires defendant WOU to establish a confidential reporting system for players to report abuse, harassment, or other misconduct without the fear of retaliation;

2.    Economic damages in the amount of $256,777 for all claims;

3.    Noneconomic damages in the amount of $28,000,000 for all claims;

4.    On Plaintiff's First and Third Claims for Relief, an award of reasonable attorneys' fees, costs and disbursements;

5.    An award of prejudgment interest on all damages at the highest rate allowed by law; and

6.    Grant such other and further relief as the Court deems just and equitable.

DATED this 29th day of January, 2025.

| SHENOA PAYNE ATTORNEY AT LAW PC | KAFOURY & MCDOUGAL |
|---|---|
| */s/ Shenoa Payne* | */s/ Jason Kafoury* |
| Shenoa Payne, OSB No 084392 | Jason Kafoury, OSB #091200 |
| spayne@paynelawpdx.com | jkafoury@kafourymcdougal.com |
| Attorney for Plaintiffs | Attorney for Plaintiffs |

Plaintiffs hereby provide notice of their intent to amend to include a claim for punitive damages on Plaintiffs' First Claim for Relief.

PAGE 58 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MARION

GRACIE ARNOLD, an individual; GRETTA BAKER, an individual; KIYLYNN DAWKINS, an individual; HANNE HOPKINS, an individual; ANA MCCLAVE, an individual; CALI MCCLAVE, an individual; JODI NOYES, an individual; KAILIANA RAMOS, an individual; and PI'O TU'IVAI, an individual,

              Plaintiff,

    v.

WESTERN OREGON UNIVERSITY, a public university of the State of Oregon; JESSICA PEATROSS, in her individual capacity; DEMENTRUS MARLOW, in his individual capacity; JESSE PETERS, in his individual capacity; MALISSA LARSON; in her individual capacity; and RANDI LYDUM, in her individual capacity,

              Defendant.

Case No. 25CV05549
SUMMONS

RECEIVED
Western Oregon University

FEB 0 3 2025

Office of the
President

TO:    Western Oregon University
       c/o Dr. Jesse Peters, President
       345 Monmouth Avenue North
       Monmouth OR 97361

    You are hereby required to appear and defend the complaint filed against you in the above entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.

**NOTICE TO THE DEFENDANT:  READ THESE PAPERS CAREFULLY!**

    You must "appear" in this case or the other side will win automatically.  To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee.  It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service upon the plaintiff.

    If you have any questions, you should see an attorney immediately.  If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

SIGNATURE OF ATTORNEY/AUTHOR FOR PLAINTIFF

Jason Kafoury, OSB No. 091200
ATTORNEYS/AUTHOR'S NAME (TYPED OR PRINTED)     BAR NO. (IF ANY)

Kafoury & McDougal, 411 SW Second Ave, Ste 200
Portland OR 97204            (503) 224-2647
CITY          STATE          ZIP          PHONE

Jason Kafoury, OSB No. 091200
TRIAL ATTORNEY IF OTHER THAN ABOVE (TYPED OR PRINTED)     BAR NO.

STATE OF OREGON    )
                  ) ss.
County of Multnomah  )

    I, the undersigned attorney of record for the plaintiffs, certify that the foregoing is an exact and complete copy of the original summons in the above entitled action.

             Jason Kafoury, OSB No. 091200, Attorney of Record for Plaintiffs

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS:  You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

             Jason Kafoury, OSB No. 091200, Attorney of Record for Plaintiffs

1/29/2025 7:50 AM

1

2

3

4    IN THE CIRCUIT COURT OF THE STATE OF OREGON

5    FOR THE COUNTY OF MARION

6  GRACIE ARNOLD, an individual; GRETTA          Case No. 25CV05549
   BAKER, an individual; KIYLYNN
7  DAWKINS, an individual; HANNE                  COMPLAINT
   HOPKINS, an individual; ANA MCCLAVE,           (First Amendment Retaliation – Speech and
8  an individual; CALI MCCLAVE, an                Petition Clause (42 U.S.C. § 1983),
   individual; JODI NOYES, an individual;         Intentional Infliction of Emotional Distress,
9  KAILIANA RAMOS, an individual; and PI'O        Negligence, Negligent Retention and
   TU'IVAI, an individual,                        Supervision, Use of Police with Intent to
10                                                 Harm (ORS 30.845))
            Plaintiffs,
11                                                 PRAYER: $28,256,777
        v.                                         ORS 21.160(1)(d)
12
   WESTERN OREGON UNIVERSITY, a                    NOT SUBJECT TO MANDATORY
13 public university of the State of Oregon;       ARBITRATION
   JESSICA PEATROSS, in her individual
14 capacity; DEMENTRUS MARLOW, in his             JURY TRIAL DEMANDED
   individual capacity; JESSE PETERS,
15 in his individual capacity; MALISSA
   LARSON; in her individual capacity; and
16 RANDI LYDUM, in her individual capacity.
17
            Defendants.
18

19    Plaintiffs demand a jury trial and allege the following:

20                              **INTRODUCTION**

21                                    1.

22    In collegiate sports, coaches have a profound and long-lasting impact on the athletes that

23 they coach. The positive impact of coaches on a collegiate athlete's life can include building a

PAGE 1 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  supportive environment that encourages collaboration, teamwork, mutual respect, mentorship,

2  support, and trust. Unfortunately, some coaches choose fear, intimidation, and abusive coaching

3  practices as a method to "motivate" collegiate athletes. Studies have shown that these abusive

4  practices impact a collegiate athlete's anxiety, stress levels, burnout, and their mental health.[1]

5                                        2.

6       Plaintiffs, all players on the Western Oregon University Women's Basketball Team

7  during the relevant time period, experienced a myriad of abusive coaching tactics at the hands of

8  defendants Coach Jessica Peatross and Coach Dementrus ("DJ") Marlow. Defendants Peatross

9  and Marlow physically abused plaintiffs through using excessive and unreasonable amounts of

10 exercise as punishment contrary to NCAA guidelines provided to all NCAA Division II schools,

11 and emotionally abused and humiliated plaintiffs through disparaging comments about their

12 bodies, tearing them down, belittling them, and telling them they were worthless.

13                                        3.

14      Plaintiffs made multiple complaints and reports about the abuse to Western Oregon

15 University officials. The First Amendment protects students from retaliation for exercising their

16 rights of petition and free speech, including complaining about abusive coaching practices.

17 Despite these clear protections, defendants all took actions to retaliate against plaintiffs,

18 including but not limited to prematurely ending the women's basketball team's 2023-2024

19 season. Furthermore, defendants terminated 10 out of 12 players from the team – those that

20 reported the abuse – and terminated their athletic scholarships, deciding only to keep the two

21 players on the team who did not complain about the coaches' conduct. Defendants' conduct

22 _____

23 [1] Mottaghi M., The relationship between coaches' and athletes' competitive anxiety, and their performance. *Iran Journal of Psychiatry Behavior Science*, 7(2): 68-76 (2013).

PAGE 2 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  constitutes, among other things, unlawful First Amendment Retaliation under 42 U.S.C. § 1983,

2  intentional infliction of emotional distress, negligence, and negligent retention and supervision.

3  <u>**VENUE**</u>

4  4.

5  Venue in Marion County is appropriate because defendant Western Oregon University

6  has a campus in Salem, Oregon, and conducts sustained, regular business activity in Marion

7  County.

8  <u>**PARTIES**</u>

9  **Plaintiffs**

10  4.

11  Plaintiffs were at all relevant times student athletes enrolled at Western Oregon University

12  and players on the 2023-2024 Women's basketball team.

13  5.

14  Plaintiff Gracie Arnold was at all relevant times a sophomore forward during the 2023-

15  2024 season.

16  6.

17  Plaintiff Gretta Baker was at all relevant times a redshirt freshman during the 2023-2024

18  season.

19  7.

20  Plaintiff Kiylynn Dawkins was at all relevant times a redshirt sophomore during the

21  2023-2024 season.

22  /////

23  /////

PAGE 3 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

8.

Plaintiff Hanne Hopkins was at all relevant times a freshman guard during the 2023-2024 season.

9.

Plaintiff Ana McClave was at all relevant times a junior guard during the 2023-2024 season.

10.

Plaintiff Cali McClave was at all relevant times a fifth-year senior guard during the 2023-2024 season.

11.

Plaintiff Jodi Noyes was at all relevant times a junior forward during the 2023-2024 season.

12.

Plaintiff Kailiana Ramos was at all relevant times a junior guard during the 2023-2024 season.

13.

Plaintiff Pi'o Tu'ivai was at all relevant times a sophomore forward during the 2023-2024 season.

**Defendants**

14.

Defendant Western Oregon University (WOU) is a public university located in Monmouth, Oregon. WOU has a student population of approximately 4,500 students and offers a

PAGE 4 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

Exhibit A
Page 304 of 417

1   range of undergraduate and graduate programs. Defendant, WOU is a public body of the State of

2   Oregon and a member institution of the NCAA Division II schools.

3                                   15.

4        Notice of this claim was timely provided to defendant WOU within 180 days of the

5   conduct described herein.  On or about July 1, 2024, plaintiffs and WOU entered in a tolling

6   agreement that tolled the time period for filing a tort claim notice from July 1, 2024, through

7   September 1, 2024 (the tolling period). On September 1, 2024, plaintiffs sent WOU a timely

8   notice of their intent to file a claim for damages via email and regular mail to WOU's counsel of

9   record.

10                                  16.

11       Defendant Jessica Peatross was at all relevant times the head coach for WOU's Women's

12  Basketball team during the 2023-2024 season.

13                                  17.

14       Defendant Dementrus ("DJ") Marlow was at all relevant times the assistant coach and

15  recruiting coordinator for the WOU's Women's Basketball team during the 2023-2024 season.

16                                  18.

17       Defendant Jesse Peters was and is at all relevant times the President of Defendant WOU.

18                                  19.

19       Defendant Malissa Larson was at all relevant times the Associate Vice President for

20  Student Affairs and Dean of Students at Defendant WOU.

21                                  20.

22       Defendant Randi Lydum was and is at all relevant times the Executive Director of

23  Intercollegiate Athletics at Defendant WOU.

PAGE 5 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

**FACTUAL ALLEGATIONS**

21.

At all relevant times, plaintiffs were collegiate athletes on WOU's women's basketball team during the 2023-2024 basketball pre-season and regular season.

22.

During her application to become the head basketball coach at Western Oregon University, Peatross misrepresented her qualifications on her resume about having played NCAA Division I basketball at Chicago State.

**Abusive Coaching Tactics**

23.

Beginning on or around August 2023, the players' pre-season began. Peatross and Marlow's coaching tactics included putting plaintiffs through extreme, excessive, and punishing workouts in every practice throughout the season. Plaintiffs were given an unreasonable amount of sprints and long-distance runs. Plaintiffs ran timed miles, two miles, suicides,[3] and 2s, 4s, 6s, 8s, 12s, 16s, and 20s[4] an excessive number of times. Any player on the team who did not make the times were given extra amounts of conditioning and were denied gear until they made the times. Plaintiffs were forced to run until they were physically sick, their feet were bloody, they were vomiting, suffering from dehydration, extreme exhaustion, and even unwanted weight loss. Plaintiffs often left to go vomit, but were then forced to run more to make up the time they were vomiting. Plaintiffs were left little to no rest between conditioning sprints or conditioning sets.

---

[3] Suicides are a running drill where the player starts at the baseline, sprints to the free throw line, springs back to the baseline, then sprints to the half-court, sprints back to the baseline, sprints to far free throwline, back to the baseline, then sprints to the far baseline, then back.
[4] 2s, 4s, 6s, 12s, 16s, and 20s, refers to the number of sprints to the other baseline and back.

PAGE 6 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    Defendants Peatross and Marlow would become angry if plaintiffs went to the bathroom or to go
2    get water.

3                                                24.

4        During the pre-season, plaintiffs were required to do three-hour practices immediately
5    after brutal conditioning sessions of 45 minutes with little to no breaks. During the season, the
6    coaches continued to exceed practice hour limitations and give players little to no breaks.

7                                                25.

8        Defendants Peatross and Marlow set unreasonable and unattainable running objectives,
9    which no plaintiff could meet. When the objectives were not met, the coaches forced plaintiffs to
10   keep running. As a direct result, plaintiffs would suffer from cramping and vomiting.
11   Additionally, these excessively rigorous practices caused plaintiffs' emotional spirits to break,
12   and plaintiffs regularly cried during practices. The coaches used extra running and extra drilling
13   as punishment.

14                                               26.

15       When players predictably became injured as a result, Defendants Marlow and Peatross
16   required players to ignore these injures, causing injuries to become worse. Defendants Marlow
17   and Peatross punished players for injuries and retaliated against them. The coaches had a
18   mentality that players could not be "hurt" but only "hurting."

19                                               27.

20       In or around July 2023, plaintiff A. McClave informed the coaches of a previous knee
21   surgery that she had in May 2023 that she was still recovering from. The coaches told her not to
22   "make excuses" and that the reason she had to have surgery was that she was "out of shape."
23   /////

PAGE 7 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

28.

In or around August 2023, the coaches demanded A. McClave attend workouts even though she was not medically cleared from her knee surgery. A. McClave refused, and Peatross demanded to see her knee scar. In or around August 2023, the coaches told A. McClave's physical therapist over the phone that they were going to make A. McClave's conditioning a "living hell." In or around September 2023, A. McClave was still not cleared by her physical therapist to fully do all the workouts, but Peatross told A. McClave that if she did not do the workouts, then she would not play. A. McClave was also told that she was "weak" and "lazy."

29.

In or around the summer of 2023, the coaches called plaintiffs to work out and show up at open gyms, even though NCAA Division II coaches are not allowed to work out players during the summer. Peatross and Marlow told plaintiffs that if they were in town and if they didn't see them working out, that plaintiffs "weren't going to make it" and the coaches were "going to break them."

30.

On or around September 2023, plaintiffs received their preseason conditioning season. The schedule included "team activities" on it. Plaintiffs assumed those activities were team bonding activities, but the activities were more workouts. This was a way in which Defendants Peatross and Marlow subversively and intentionally overused their NCAA privileges and flouted the NCAA rules.

31.

On or around September 8, 2023, Peatross and Marlow ran plaintiffs so long and so hard that plaintiff Arnold's feet bled, which she had never experienced before.

PAGE 8 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

32.

On or around September 11, 2023, Peatross and Marlow over-trained plaintiffs for three and a half hours, leading to dehydration, extreme fatigue, and exhaustion. Peatross and Marlow punished plaintiffs if they were unable to meet the coaches' extreme time limits for conditioning.

33.

On or around September 13, 2023, plaintiff Baker experienced a right knee injury due to overuse from the extreme conditioning and basketball practices that took her out of play for the month due to the knee trauma and sprain, which required multiple and continuing physical therapy sessions.

34.

On or around September 18, 2023, plaintiff Noyes suffered an overuse injury on her right iliotibial (IT) band due to the excessive amounts of conditioning that Marlow and Peatross forced Plaintiffs to engage in. Noyes treated the injury with the athletic trainer, but Peatross and Marlow did not give Noyes the proper amount of time to fully recover, and the injury became extremely painful after timed mile runs and stadium stair workouts.

35.

On or around mid-September 2023, Peatross and Marlow required plaintiffs to run so much that they became physically sick, vomiting several times.

36.

If a player on the team made a mistake in a drill or did not complete it to the coaches' liking, Peatross and Marlow would use additional and excessive running as a form of punishment. One day, plaintiffs were forced to start practice with little to no warmup and were

PAGE 9 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   told to start with a very fast paced full court drill. Plaintiffs made mistakes, which led to the

2   coaches stopping the drill and making plaintiffs run nine down-and-backs and three suicides.

3                                          37.

4           Plaintiffs also were forced to work out when sick or injured. Defendants Peatross and

5   Marlow accused plaintiffs of faking injuries and forced plaintiffs to work out or do conditioning

6   tests while they were injured. If a plaintiff was injured in practice, Peatross and Marlow would

7   not acknowledge the injury or stop the practice.

8                                          38.

9           In or around mid-September 2023, plaintiff Dawkins pulled her calf and was in pain

10  every step that she took. Plaintiff Dawkins reported her injury to Peatross and Marlow, but they

11  pushed her concerns aside and started the conditioning workout. Dawkins attempted to push

12  through, but her pain increased. Dawkins then attempted to stretch and walk it off, but the pain

13  did not subside. Dawkins told Marlow that her calf was in a lot of pain and showed him that her

14  calf was bruised. Later that day following conditioning, defendant Peatross pulled Dawkins aside

15  and required her to run until Peatross told her to stop. Dawkins did not understand why she was

16  being punished for having an injury. As soon as she was told to stop, Peatross put her into live

17  play. Dawkins later required home therapy exercise and rehabilitation to get her calf back to

18  normal.

19                                         39.

20          In or around mid-September 2023, plaintiff Tu'ivai pulled her hamstring when plaintiffs

21  were running in the cold weather due to ongoing forced excessive running. Tu'ivai kept playing

22  and running through the injury due to the coaches' theme of not being "hurt," but only "hurting."

23  A few days later, Tu'ivai injured her right knee. Tu'ivai informed defendants Marlow and

PAGE 10 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    Peatross that she felt a popping sensation as they were running a two-mile run.  Marlow and

2    Peatross disregarded her concerns and forced her to continue to practice. As a result, Tu'ivai was

3    required to obtain physical therapy for her injury and miss practice and games.

4                                        40.

5         On or around mid-September 2023, plaintiff Ramos pulled her hip or hamstring and

6    developed shin splints due to the overexertion and strain on her body caused by Defendants

7    Peatross and Marlow's excessive trainings and practices.

8                                        41.

9         On or around October 2023, the team apparently did not perform a drill to the coaches'

10   satisfaction. As a result, the coaches used running as a form of punishment. Plaintiffs ran over

11   eight 4s, four suicides, and down and back all for time, for a total of 30 minutes straight.

12                                       42.

13        In or around late October or early November 2023, plaintiff Hopkins popped her shoulder

14   out of its socket in a practice, which was extremely painful. Peatross told Hopkins that she was

15   "fine" and would not allow her to go see the athletic trainer.

16                                       43.

17        On or around November 10, 2023, during the first game away, the coaches introduced a

18   "rule" of taking the players' personal belongings during the night before a game. The coaches

19   would confiscate the players' phones and threatened to wake them up at 3:00 a.m. and force

20   them to run during the night until the sun came up if plaintiffs were caught with a phone.

21                                       44.

22        On or around November 14, 2023, during a game against George Fox University (GFU),

23   the coaches threatened plaintiffs at halftime that if they did not beat GFU by at least 20 points,

PAGE 11 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  they would be running the next day at practice. When the team failed to meet that arbitrary goal,

2  the coaches used running as form of physical punishment. Running was also regularly used as

3  punishment after the team would lose a game.

4                                          45.

5       In or around late November 2023, A. McClave developed bronchitis due to the

6  exhaustion from the over conditioning, physical abuse, and emotional abuse from the coaches.

7  Due to her bronchitis, A. McClave visited doctors three times, obtained medications, and had

8  been to the hospital. She informed the coaches and provided a doctors' note that she had

9  bronchitis. Peatross told her to go put on her shoes and that she "would practice." A. McClave

10  went to the athletic trainer to complain, and the athletic trainer stormed into the coaches' office

11  and told the coaches that A. McClave was too sick to practice. The coaches argued with the

12  athletic trainer and proceeded to laugh at A. McClave. In or around December 2023, when A.

13  McClave returned from having bronchitis, she was punished by the coaches with extra running

14  and drills.

15                                          46.

16       In or around November 2023, Marlow accused plaintiffs of drinking and being hungover

17  during practice, when in actuality plaintiffs were sick from a winter bug. Marlow forced

18  plaintiffs to run for not performing well while being sick and then told plaintiffs that they had to

19  play a game the following day.

20                                          47.

21       The coaches forced plaintiffs to miss academic classes for basketball practice. If one

22  plaintiff had a failing grade, the whole team would be forced to run as punishment.

23  /////

PAGE 12 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

48.

On many occasions, Marlow would sub in during practices and play against the team. During these times, Marlow would be unnecessarily and intentionally aggressive, which made plaintiffs fear for their physical safety and fear getting injured. Plaintiffs would play against male football players as well; however, the male football players were not nearly as aggressive as Marlow.

49.

Due to excessive running, most plaintiffs were "in the red" during jumping tests designed to see how fatigued athletes were. This meant that plaintiffs' bodies were overworked and extremely fatigued. Plaintiffs were barely able to lift weights because of exhaustion. The weight coach regularly had to revise the strength workouts because plaintiffs were too physically exhausted and weak.

50.

In or around December 2023, Peatross and Marlow stopped scheduling weights, which led to plaintiffs losing muscle, becoming weak, and suffering further injuries.

51.

Peatross and Marlow regularly violated NCAA rules, including Countable Athletically Related Activity (CARA) hours in multiple ways:

    a.    Peatross and Marlow failed to explain CARA hours to plaintiffs, and had freshmen sign the NCAA timesheet to verify that coaches were following the rules. Freshmen would be either ignorant of the rules or too scared of their new coaches to not sign.

/////

PAGE 13 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

b.   The preseason rule was eight hours total per week divided into four hours for weights and four hours for basketball. On or around September 8, 2023, the coaches put all eight hours into two days, which was contrary to the calendar provided to plaintiffs.

c.   Peatross and Marlow regularly went over CARA hours and did not follow the schedule. The schedule that was sent to WOU's athletic directors was two different groups for conditioning, four different group workouts, and an "optional" open gym. Instead, the coaches combined all those hours.

d.   "Optional" open gyms were not optional. Plaintiffs were told that anything marked "optional" on the calendar was not optional and the coaches directed it.

i.   Any "open gym," "team activity," and "group workout" on the calendar were basketball workouts with the whole team and coaches. On or around September 12, 2023, the first violation of a "team activity" was when plaintiffs had a turf workout and then went straight into the gym to run more as their "team activity."

e.   The coaches exceeded allowed practice time every day; every practice would average three hours, sometimes with a 45-minute conditioning session right beforehand.

f.   On or around November 2023, team practice was eight days in a row, but the NCAA rule was no more than seven days in a row.

52.

Peatross and Marlow regularly violated other NCAA rules including, but not limited to:

/////

PAGE 14 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1       a.     Coaching during open gyms during the summer and preseason. The coaches

2               would intrude on the players' private workouts, which are supposed to be

3               voluntary, and force them to go through an entire workout.

4       b.     Forcing the team of a public university to pray before every game and playing

5               religious music during car rides and practice.

6       c.     Using running for punishment.

7       d.     Violating all the rules that involve practicing and overexertion of athletes.

8       e.     Forcing plaintiffs to miss class for practice and workouts. In or around January

9               2024, "shootarounds"[5] were on the calendar during class times.

10      f.     Forcing plaintiffs to stay more than two to a room during travel trips.

11      a.     Forcing plaintiffs to room with Emily Wentworth, a paid manager.

12      g.     Taking plaintiffs' personal possessions from them during away game trips.

13      h.     Peatross lying on her coaching application by stating that she played four years of

14              Division 1 basketball at Chicago State.

15                      **Emotional Abuse and Bullying Tactics**

16                            53.

17  On or around August 2023 during the pre-season through the end of the season in

18  February 2024, Peatross and Marlow told plaintiffs that they couldn't be friends with each other

19  and used various tactics to pit plaintiffs against each other, such as telling one plaintiff that

20  another plaintiff was better than they were, degrading a plaintiff in front of one of more

21  plaintiffs, and encouraging plaintiffs to engage in degrading other plaintiffs.

22  /////

23

---

[5] "Shootaround" is an informal practice session, typically held before a game.

PAGE 15 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

54.

Beginning on or around August 2023 during the pre-season and throughout the remainder of the season, Peatross and Marlow frequently used quotes that caused division amongst the team, such as "kill or be killed," "your teammates are not your friends," and "don't help your teammates off the ground." Marlow posted negative and demeaning Tweets about the team or a plaintiff, such as "everybody wants to be a winner until it's time to prepare like a winner does" and "people don't respect the process, they only respect the payoff."

55.

On or around August 2023, during a Zoom meeting with plaintiffs, the coaches told plaintiffs that they would not be allowed to help other plaintiffs off the floor, including practice teams. Defendants Peatross and Marlow told plaintiffs they wanted to hear them "shit talk" each other and encouraged negativity.

56.

Peatross and Marlow would ask one plaintiff what they thought of another plaintiff and would tell one plaintiff they wanted to get rid of another plaintiff. Later, they would call plaintiffs "tattletales" to embarrass them. Peatross and Marlow would make fun of plaintiffs in front of the team to humiliate them. Plaintiffs felt like they were in a trap and that Peatross and Marlow would twist anything they would say.

57.

Peatross and Marlow would degrade plaintiffs in front of the team or in individual meetings. Peatross and Marlow would accuse plaintiffs of being drunk or hungover, they would single plaintiffs out for their "attitudes," and made plaintiffs feel like they weren't making an effort. Plaintiffs were told that they were "too weak" or "too emotional," to receive "criticism."

PAGE 16 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    Additionally, plaintiffs were told to "work hard" and they needed to "man up" or stop being a

2    "bitch." These comments would be made in a tone that was bullying, snarky, and nasty.

3    Oftentimes, Peatross and Marlow would be yelling at plaintiffs.

4                                      58.

5         Peatross and Marlow told plaintiffs they weren't good enough to be in the conference.

6    Peatross and Marlow told plaintiffs that they didn't work hard even though they worked

7    themselves into exhaustion to prove themselves. Plaintiffs were called "weak," "lazy," "soft,"

8    "dogshit," "spoiled," and "entitled." Peatross and Marlow told plaintiff Noyes she acted like the

9    Disney character, "Eeyore," because she was too "low energy." Peatross and Marlow repeatedly

10   questioned plaintiffs' statements that they were putting in effort, tried to make plaintiffs prove it,

11   and told plaintiffs that they wouldn't be there next year.

12                                     59.

13        Defendants Peatross and Marlow also told plaintiffs they didn't believe they were

14   injured. They would say things like "you're not hurt, you're just hurting," and told plaintiffs they

15   were making excuses, having a bad attitude, or being lazy. Some plaintiffs went to the athletic

16   director and told her the coaches didn't believe they were actually injured and asked her to tell

17   the coaches that they were actually injured.

18                                     60.

19        Defendants Peatross and Marlow manipulated plaintiffs by lying to them and telling

20   stories about her basketball days at Chicago State to make plaintiffs seem weak. She commented

21   that they should be worried if they aren't contacted individually. The coaches would then contact

22   some plaintiffs individually for meetings, or to view film, and not contact other plaintiffs,

23   making plaintiffs feel worried and left out.

PAGE 17 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

61.

Plaintiffs would be called in to "watch film" with Peatross and Marlow, but instead the coaches would belittle them and tell plaintiffs how "shitty" they were. If plaintiffs ever tried to express their exhaustion or struggles, they would be accused of making excuses, told that they didn't want to be there, and that so many other women would love to be in their position.

62.

On or around late October or early November 2023, Peatross and Marlow stopped a drill and required Arnold, Dawkins, and Noyes to compete against each other one-on-one in front of the team. The coaches taunted them during the drill, yelling "who wants it more" for approximately ten minutes. Plaintiffs were confused and concerned at this behavior. Arnold, Dawkins, and Noyes felt defeated and berated in front of their entire team.

63.

On or around November 2023, Peatross and Marlow started to pull A. McClave into meetings to watch film, where they questioned how A. McClave got into WOU, told her everyone calls her "dogshit," and that no one knew why she was there. Peatross and Marlow required A. McClave to meet with them three times a week where they would tell her that she was "lazy" and "entitled."

64.

On or around November 2023, Peatross and Marlow encouraged plaintiff Noyes to stop taking anti-depressant medication because the coaches thought the medication was affecting her performance. During a game, Marlow pulled Noyes out and asked Noyes if she had taken her medication that day. This led Noyes to stop taking her necessary anti-depressant medication for approximately one week, which caused her physical symptoms.

PAGE 18 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

65.

On or around November 17, 2023, the coaches called A. McClave "lazy" and a "brat" during game to her teammates within earshot of A. McClave after defendants Marlow and Peatross pulled her out of a game and sat her on the bench.

66.

On or around December 2023, Defendants Peatross and Marlow pulled plaintiff A. McClave into a meeting where they said untrue things about Hopkins in an attempt to pit the two plaintiffs against each other.

67.

On or December 2023, Defendants Marlow and Peatross would tell A. McClave every day that she was a "brat," "lazy," and "the worst."

68.

On or around January 2024, plaintiff Hopkins was told by Defendants Marlow and Peatross to be more of an "asshole" to her teammates and that she needed to stop being so encouraging to them.

69.

Peatross and Marlow would body shame plaintiffs by telling the team that they needed to work on their bodies, comment on how they looked and weighed, and tell plaintiffs that they were too skinny or too short to compete against college girls, after the coaches forced them into extreme weight loss with punishing workouts.

/////

/////

/////

PAGE 19 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1

**Prior Similar Abusive Coaching Tactics and Complaints at Salem University**

2

70.

3    Prior to coaching basketball at WOU, Peatross and Marlow previously coached

4    basketball at Salem University during the 2022-2023 season. Players at Salem University

5    experienced similar abusive coaching tactics from Peatross and Marlow, including but not

6    limited to blatant disregard of NCAA rules, overexertion, exercise as punishment, verbal abuse

7    and harassment, and retaliation for complaining.

8

**Retaliation by Coaches and Failure to Investigate by WOU**

9

71.

10    Plaintiffs made multiple complaints to WOU officials and received no help. Instead,

11    Defendants Peatross and Marlow retaliated against plaintiffs for making complaints against

12    them.

13

72.

14    On or around mid-September 2023, plaintiff Tu'ivai was injured, was sitting on the

15    sidelines during practice and witnessed a lot of the coaches' abusive practices. Tu'ivai was very

16    vocal about defending her teammates from the coaches' emotional and physical abuse. For health

17    insurance reasons, Tu'ivai had to travel back and forth from Hawaii for medical treatment.

18    During Christmas break, Tu'ivai had an issue with her flight returning from Hawaii. Despite

19    constant contact with defendants Marlow and Peatross, they suspended her from the team upon

20    her return.

21    /////

22    /////

23    /////

PAGE 20 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

73.

In or about November 2023, plaintiff Noyes's father called defendant Lydum, Executive Director of Intercollegiate Athletics, and reported the fact that the coaches had told Noyes to stop taking her anti-depressant medication. He received no response.

74.

On or around November 22, 2023, plaintiff C. McClave, acting as team captain and a representative for plaintiffs, met with Lydum and informed her of the abusive practices by defendants Marlow and Peatross as outlined in paragraphs 21 through 70 above. Lydum acknowledge that there were issues with Peatross and Marlow and stated that she was "sorry you have to deal with this," "the coaches will not be here next year," and "these coaches deceived us, and this is not what we wanted for the school." Lydum even joked with C. McClave that Lydum didn't have a great track record with hires, as she previously had to fire a soccer coach and volleyball coach for abuse. However, Lydum took no action to protect plaintiffs in response to C. McClave's complaint.

75.

On or about the same date, plaintiff Hopkins and her father also reported to Lydum the coaches' abusive coaching tactics, as alleged in paragraphs 21 through 70. Again, Lydum took no action to protect plaintiffs in response to Hopkins' complaint.

76.

On information and belief, defendant Lydum informed defendants Peatross and Marlow that plaintiffs on the team had made complaints against them and, on information and belief, informed them that those complaints came from plaintiffs Hopkins and C. McClave.

/////

PAGE 21 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

77.

As a result, later that day, on or around November 22, 2023, Peatross and Marlow called a team meeting. The meeting was approximately 75 minutes long. Peatross noted that were some "problems" on the team because some players were going to Lydum with complaints. The coaches told plaintiffs that they were being "dramatic" and were "tattletales." The coaches warned plaintiffs to never go over their heads again.

78.

On or about November 26, 2023, Florence Coriz, Ramos's mother, contacted Lydum to request a meeting for concerns she had about the women's basketball program at WOU, including, but not limited to the coaches' disparaging, condescending comments and how they were affecting her daughter's mental health, her daughter's injuries from excessive running, how her daughter was missing classes due to basketball practice and her grades were suffering, how Coach Peatross had left the student athletes at the airport in Los Angeles with no direction of where they were supposed to go, and concerns over supervision and responsibility over the student athletes while traveling out of state. Lydum never returned Ms. Coriz's emails or phone calls.

79.

On or about November 27, 2023, plaintiff C. McClave had a verbal conversation with Lydum and reported that she discovered that players on the Women's basketball team at Salem University also had experienced similar abusive coaching practices from Peatross and Marlow when they coached the team there. Instead of taking her report seriously, Lydum told C. McClave to stop talking to the Salem University women's basketball players.

/////

PAGE 22 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

80.

On or about November 29, 2023, Ms. Coriz contacted assistant Athletic Director, Justin Crosswhite, and informed him that plaintiffs were experiencing emotional abuse from Peatross and Marlow. Ms. Coriz also spoke to Peatross in person and expressed concern for her daughter's mental health as a result of Peatross's and Marlow's coaching tactics. After Ms. Coriz spoke with Peatross, plaintiff Ramos' playing time was significantly reduced and she got the silent treatment from Peatross. The coaches barely talked to Ramos again other than to criticize her.

81.

On or about February 7, 2024, Ms. Coriz and Ramos met with defendant Malissa Larson, Associate Vice President for Student Affairs and Dean of Students, for an hour and half about the same issues. Larson took notes during that meeting. Afterward, there was no response or attempt at resolution from Larson. After that, Ms. Coriz went to every away game because she didn't feel that her daughter was safe with the coaches.

82.

On or about December 4, 2023, plaintiff A. McClave met with Lydum in person and provided a three-page list of complaints and concerns on behalf of plaintiffs about defendants Peatross and Marlow, including but not limited to:

    a.    Plaintiffs did not want to be part of the women's basketball team anymore due to the treatment they were receiving;

    b.    Each day felt like they needed to stand up to a bully;

    c.    The environment was unhealthy;

    d.    Peatross lied about her professional background;

PAGE 23 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   e.    Plaintiffs were being punished for speaking up;

2   f.    Coaches Peatross and Marlow were verbally and mentally abusive;

3   g.    Plaintiffs were being called lazy and "dogshit;" and

4   h.    The abusive coaching practices were affecting plaintiffs' mental health and sanity.

5                                    83.

6   During the meeting on December 4, 2023, plaintiff A. McClave told Lydum that she was

7   afraid that Coaches Peatross and Marlow were going to hurt her in retaliation for speaking up.

8   Despite that Lydum had been informed that many of plaintiffs had suffered serious physical

9   injuries due to the excessive and dangerous workouts, Lydum stated that plaintiffs had to be

10  "physically hit for [Peatross and Marlow] to be fired," and she can't fire the coaches "for verbal,

11  emotional or mental abuse."

12                                   84.

13  Defendants Peatross and Marlow made good on their warning to players not to go over

14  their heads again. After the team meeting on or around November 22, 2023, their abusive

15  coaching tactics escalated.

16                                   85.

17  On or about December 14, 2023, defendants Peatross and Marlow scheduled individual

18  meetings with plaintiffs. Plaintiff A. McClave informed Lydum of the pending meetings and that

19  she had a bad feeling there would be retaliation. As expected, the coaches lashed out at plaintiffs

20  by berating, bullying, and verbally attacking them to the point where plaintiffs would cry. The

21  coaches threatened to kick plaintiffs off the team if they stood up to the coaches. As a result of

22  this threatening behavior, plaintiff A. McClave requested that Lydum have a school official

23  present at all practices.

PAGE 24 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

86.

On or about February 1, 2024, plaintiff Hopkins was pulled into a meeting with Coaches Peatross and Marlow where they accused her of having a negative attitude and the coaches knew she had said bad things about them. The coaches told Hopkins that she wouldn't be playing if "she wasn't on their side." Following that conversation, Hopkins saw much less playing time and was pulled out of the starting lineup.

87.

On or about February 3, 2024, Coaches Peatross and Marlow brought plaintiff Baker into a meeting and told her that she was "uncoachable," disrespectful, and that her attitude was not acceptable. Baker felt threatened by the coaches' behavior and was afraid to speak up about anything to them for fear of further retaliation.

88.

The coaches' aggressive drills escalated after the reports in November and early December, and players became even more exhausted, causing more injuries. On or about December 18, 2023, while completing an aggressive full court drill, Arnold became over exhausted as a result of excessive exercise, which had gotten worse after the team made complaints. Arnold suffered a knee injury as a result during practice. The coaches never checked on Arnold after the injury. Arnold later had to have knee surgery as a result of this injury.

89.

On or about January 4, 2024, Marlow decided to scrimmage with the players. During a half-court scrimmage, plaintiff A. McClave was by the half-court line passing the ball back and forth with a teammate and she had her back turned to Marlow. On information and belief, Marlow intentionally rammed into A. McClave in the back when she was not looking. A.

PAGE 25 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   McClave slammed into the ground and reinjured her knee. All her teammates rushed over to her

2   in concern, but Marlow just laughed at her on the ground and expressed no concern whatsoever.

3   Instead, Coach Marlow screamed at A. McClave and as she limped off the court, yelled "what is

4   wrong with you, don't you even want to be here." Peatross also yelled at A. McClave and told

5   her to "get out" and go to the trainer.

6                               90.

7          On or about the same day, A. McClave reported the incident to Lydum and reported that

8   she believed that Coach Marlow had intentionally injured her. A. McClave requested that Lydum

9   interview her teammates and obtain the practice video. Lydum failed to investigate Marlow's

10   intentional injury in a timely and reasonable manner.

11                              91.

12          On or about January 5, 2024, plaintiff Tu'ivai's mother emailed Lydum to complain

13   about Tu'ivai's suspension, asserted that Tu'ivai's injury was due to the coaches' negligence and

14   unsafe coaching environment, and that Tu'ivai felt belittled and racially unaccepted. Lydum

15   failed to investigate Tu'ivai's mother's report in a timely and reasonable manner.

16                              92.

17          On or about January 9, 2024, A. McClave met in person with Larson, to discuss the

18   complaints and reports plaintiffs made regarding the coaches' abusive tactics. Following the

19   meeting, Larson shared her concerns with Lydum. Lydum informed A. McClave that Larson and

20   Lydum would be working together to "address some of the concerns" that she shared. However,

21   neither Larson nor Lydum investigated A. McClave's reports in a timely and reasonable manner.

22   /////

23   /////

PAGE 26 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

93.

On or about January 13, 2024, all plaintiffs, via email to Lydum, requested an urgent meeting to discuss Peatross and Marlow and their abusive coaching practices, their retaliatory conduct, and the effect it was having on their mental health. Lydum initially declined to meet with Plaintiffs in person as a group, because two players on the team who had not complained about the coaches -- Youngblood and Pedrojetti – were not included in the email chain. However, Lydum ultimately agreed to meet with C. McClave and another player, Ally Harman. Lydum stated that although the situation was bad, it wasn't bad enough for her to do anything about it because no one had been "physically abused." This was even though several plaintiffs had suffered physical injuries due to the coaches' abusive coaching tactics and that A. McClave reported that she believed Coach Marlow had intentionally injured her.

94.

On or about January 15, 2024, A. McClave complained to Cori Metzgar, WOU's Director of Sports Performance via email and stated that the team "really needs help right now" and that "no adult is believing us with the abuse the coaches give us." Metzgar responded that she was not sure how much she could do.

95.

On or about January 17, 2024, Hopkins complained to Lydum that the coaches were making plaintiffs miss classes in violation of NCAA rules.

96.

On or about January 19, 2024. Hopkins complained to Lydum that defendants Peatross and Marlow's behavior toward her made her think that they knew she had reported them to Lydum. Hopkins asserted that she was experiencing retaliation from the coaches in the form of

PAGE 27 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  reduced playing time, pulling her out of games for no reason, and pitting her against her

2  teammates. Hopkins complained again about the abusive behavior toward her teammates. Lydum

3  failed to investigate Hopkins' reports in a timely and reasonable manner.

4                                  97.

5      On or about February 5, 2024, Hopkins complained to Lydum that ever since she first

6  met with Lydum, her playing time was reduced. Hopkins further informed Lydum that the

7  coaches had been retaliating in similar ways against other plaintiffs, including but not limited to

8  Ramos, Baker, and A. McClave. Hopkins expressed concern that the coaches were going to do

9  anything they could do to take her down. Lydum failed to investigate in a timely and reasonable

10 manner.

11                                 98.

12     On or about February 6, 2024, Ms. Coriz complained to Larson about the abusive

13 coaching tactics and the retaliation. Larson failed to investigate in a timely and reasonable

14 manner.

15                                 99.

16     On or about February 6, 2024, Hopkins' father, Glenn Hopkins, complained to Lydum

17 via email that all plaintiffs were mistreated, abused, neglected, and that he was extremely

18 concerned about his daughter's mental health, emotional health, and physical safety. Mr.

19 Hopkins described concerns that Coach Marlow was inserting himself into the practices and

20 scrimmages with plaintiffs, competing at 100% level versus plaintiffs, and talking down to them

21 constantly while doing so. Mr. Hopkins stated that A. McClave suffered a season ending injury.

22 Mr. Hopkins expressed concerns that Hopkins had a target on her back for making complaints

23 and was afraid Coach Marlow would intentionally hurt her, as he had done with A. McClave.

PAGE 28 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  Mr. Hopkins also stated that his daughter was on the verge of a mental breakdown due to the

2  mental abuse and mind games that both coaches were engaging in. Mr. Hopkins specifically

3  requested that the coaches not be permitted to meet privately with his daughter anymore. Mr.

4  Hopkins did not receive a response.

5                                              100.

6          On or about February 12, 2024, Mr. Hopkins' concerns that his daughter had a target on

7  her back proved true. During practice on that day, Peatross and Marlow had plaintiffs doing

8  three-on-three drills for ten minutes at a times, and the losing teams would be forced to run

9  suicides and 4s. This resulted in plaintiffs running for nearly an hour. Peatross and Marlow were

10 taunting plaintiffs during this time, yelling at them "who really wants it" and "who actually

11 wants to work to win." A. McClave, who previously was injured by Coach Marlow, stood up for

12 her teammates and told the coaches that the amount of running was physically abusive. While

13 plaintiffs were running, Coach Peatross stood on the court in the middle of the running lane,

14 creating a tripping hazard. Hopkins was running in the lane and looking to get the basketball,

15 when she accidentally ran into Coach Peatross.

16                                             101.

17         Coach Peatross then stopped the practice and walked very quickly towards Hopkins.

18 Hopkins believed that Coach Peatross might hit her. Coach Peatross then accused Hopkins of

19 throwing her arm out and purposely running into her. Hopkins attempted to deny the allegation,

20 but Peatross would not let her speak. Coach Peatross screamed at Hopkins to get out. Hopkins

21 complied, walked out, and began to sob uncontrollably. Hopkins felt defeated, broken, and like

22 she had no voice. Hopkins felt afraid of Coach Peatross and sick to her stomach because she had

23 done nothing but run up the court.

PAGE 29 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

102.

Having observed what happened, some members of the team knew that Coach Peatross was falsely accusing Hopkins, and they became very upset. Ramos went to comfort Hopkins and to explain to Coach Peatross that Hopkins did not intentionally run into her. In response, the coaches began screaming and kicked Ramos out of practice. A. McClave began videoing what was going on, and Coach Marlow called WOU Public Safety officers on A. McClave. Coach Marlow screamed at A. McClave that he had "called the cops on her" and this made her very afraid. Public Safety Officers arrived and Coach Marlow had them escort A. McClave out of the gym. The coaches' behavior during this practice included instigating a physical altercation, falsely accusing Hopkins of assault, calling campus safety on A. McClave, screaming at Hopkins and A. McClave, and making plaintiffs fear for their own safety and well-being.

103.

On or about February 17, 2024, Peatross filed a false police report against Hopkins accusing Hopkins of "intentionally elbowing her" in the chest during the practice on or about February 12, 2024. Peatross claimed she had a hard time breathing, was light-headed, that the pain was a "10 out of 10," and was the "worst pain she ever experienced." Peatross also falsely reported that Hopkins assaulted her to the school administration.

104.

Despite multiple requests, WOU refused to provide a copy of the practice video from February 12, 2024 to Hopkins. However, after a Monmouth Police Officer was able to finally review the footage, he found that Peatross's reports to law enforcement were unsubstantiated.

/////

/////

PAGE 30 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

105.

As a result of Peatross's false police report and intentional misuse of police, Hopkins public reputation on campus was harmed, including with campus security, students, parents, campus staff, and boosters[6] around campus. A WOU booster told Hopkins' grandparents that the season ended because Hopkins "slammed into the coach." Hopkins' reputation has been severely affected by Peatross, causing Hopkins immense mental anguish, stress, and fear.

**In Response to Plaintiffs' Continued Complaints to WOU Officials,**

**WOU Officials Cancel their Season**

106.

On or about February 13, 2024, Ms. Coriz, contacted Crosswhite again to let him know that things were progressively getting worse, that Marlow made derogatory comments during practice, and that Marlow kicked Ramos out of practice merely for comforting Hopkins when Hopkins had been kicked out of practice, and falsely accused Hopkins of assaulting Peatross. Ms. Coriz requested an intervention.

107.

That same day, plaintiffs jointly submitted a detailed and extensive written document to WOU staff, including Larson, Dean of Students, Tina Fuchs, Vice-President of Student Affairs, Dominique Vargas, Executive Director of Diversity, Equity, and Inclusion, and Dave Haglund, GNAC commissioner. The document was titled "player testimony" and outlined the history of physical and emotional abuse that plaintiffs had endured by the coaches.

/////

---

[6] In this context, "boosters" refers to supporters or donors who often contribute time, resources, or money to support athletic programs. These individuals are typically fans, alumni, or community members.

PAGE 31 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

108.

That same day, plaintiffs had an in-person meeting with Lydum and Metzgar regarding the incidents during practice on or about February 12, 2024 as alleged in paragraphs 100 through 105. Lydum informed plaintiffs that she was leaving town to go to Hawaii and that she was leaving Metzgar in charge. Lydum commented during this meeting that she knew that Larson knew about the complaints and the two of them had talked.

109.

On or about February 14, 2024, A. McClave provided Larson a six-page email asking for help for herself and her teammates. A. McClave outlined the abusive coaching practices, including ignoring plaintiffs' injuries, excessive running and conditioning, violating CARA hours, bullying, emotional abuse, and that Marlow intentionally injured her and caused a season-ending knee injury in retaliation for her speaking up about the abuse. A. McClave also explained that after the February 12, 2024, incident, she was kicked out of practice and Marlow called security to come and remove her. A. McClave stated that "this has been the most traumatizing experience, I would like a year of my eligibility back, I got that taken away from me."

110.

On or about February 14, 2024, Hopkins sent an email to Larson, Vargas, and Maria Bonifacio-Sample, Director of Student Conduct, with her written testimony about her experience that season.

111.

On or about February 14, 2024, Tu'ivai filled out an online student concern form regarding physical safety and mental wellness due to Peatross and Marlow's abusive coaching practices.

PAGE 32 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

Exhibit A
Page 332 of 417

112.

On or about February 15, 2024, C. McClave complained to Vargas, Bonifacio-Sample, Fuchs, and Larson regarding the use of excessive physical exercise punishment, inappropriate and abusive behavior by the coaches, and retaliation by the coaches in response to plaintiffs' complaints, and expressing disappointment in the lack of effort on behalf of WOU to protect plaintiffs.

113.

On or about February 15, 2024, without prior notice, while Lydum was in Hawaii, the entire team was called into a meeting with Michael Gonzalez, Administrative Program Specialist, Peatross, Marlow, and Larson. Although Lydum had left Metzgar in charge in her absence, Metzgar was not made aware of this meeting. Plaintiffs were then required to vote on a notecard whether they wanted to continue their season. Defendant Larson joked and sang jeopardy music while plaintiffs voted. This made plaintiffs feel like they were not being taken seriously. Plaintiffs voted to finish the season, but with different coaches who would not abuse them.

114.

Instead, WOU unilaterally terminated the 2023-2024 basketball season without plaintiffs' consent. On information and belief, this decision was made by defendants Peatross, Marlow, Lydum, Peters, and Larson, and/or ratified by defendants Larson, Lydum, and/or Peters.

115.

On or about February 15, 2024, Mr. Hopkins, provided an eight-page email to Peters, Fuchs, Larson, and Metzgar. The email summarized the majority of the abusive coaching tactics that plaintiffs had endured throughout the year, the complaints they had made, and asked the

PAGE 33 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  school to allow plaintiffs to finish the season without Peatross and Marlow. Mr. Hopkins offered

2  to coach the remainder of the season himself.

3                                             116.

4       On or about February 16, 2024, Coriz contacted Lydum and expressed disappointment at

5  having her daughter's senior year cut short because of the behavior of defendants Peatross and

6  Marlow and emphasized that plaintiffs chose to finish the season with alternative resources.

7                                             117.

8       On or about February 17, 2024, A. and C. McClave's mother sent an email to Peters,

9  Crosswhite, Larson, Metzgar, and Lydum, again complaining about A. McClave's injury,

10  requesting film, stating that it was absolutely inappropriate to put plaintiffs in a room with their

11  abusers, and stating that Lydum should not be off in Hawaii while her players' season was being

12  ended due to serious physical and mental abuse. She specifically noted that "if this was the

13  men's team would she be allowed to be with another team in Hawaii? I doubt it!" She requested

14  that the Coaches be suspended and that plaintiffs be permitted to finish the season.

15                                             118.

16       Nonetheless, defendant WOU, through defendants Larson and Peters, informed the

17  university and the public that the remainder of the women's 2023-2024 basketball season had

18  been canceled, a decision they claimed was prompted by "team challenges for the program."

19                                             119.

20       Due to the failure of defendants WOU, by and through Lydum, Larson, and Peters, to

21  protect plaintiffs from ongoing abuse, and their decision instead to preemptively end plaintiffs'

22  basketball season, plaintiff Baker reasonably believed that she had no choice but to leave the

23

PAGE 34 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  team and enter the transfer portal and was therefore constructively discharged from the team. She

2  entered the transfer portal on or around late February 2024.

**WOU Conducts a Sham Investigation**

3

4  120.

5  On or about February 18, 2024, nearly three months after plaintiffs first made complaints

6  about the abusive practices, WOU placed Peatross and Marlow on administrative paid leave

7  pending an investigation conducted by an external law firm, Littler Mendelson to determine

8  whether the coaches "jeopardized player safety."

9  121.

10  Out of the 12 students that made complaints, only four of them were interviewed – A.

11  McClave, C. McClave, Ramos, and Hopkins. The only other players that were interviewed were

12  Youngblood and Pedrojetti, the players that had not made any complaints against Peatross and

13  Marlow. Littler Mendelson also interviewed Peatross and Marlow. Littler did not interview any

14  other plaintiffs or players that made complaints of abusive practice, and did not interview any of

15  the players from Salem University who also had complained of abusive coaching practices.

16  122.

17  On information and belief, the investigation failed to review videos of practices,

18  including the February 12, 2024 practice. The investigator did not request videos, emails,

19  documents, or other recordings from plaintiffs.

20  123.

21  On information and belief, the investigation failed to look at the police report filed by

22  Peatross against Hopkins and failed to question the officer who took the report and investigated

23  the allegations in the report.

PAGE 35 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

124.

On information and belief, the investigation failed to look into Coach Peatross's background and the fact that she misrepresented her credentials, further impacting her veracity.

125.

On or about April 2, 2024, WOU announced that "following a comprehensive investigation, the allegations against the coaches were not sustained" and that both coaches would return to their regular duties and resume their roles as coaches of the women's basketball team. Despite multiple requests, the investigation, the findings, and the report have been withheld from plaintiffs and the public.

**Plaintiffs Continue to Make Complaints
and then are Terminated from the Team**

126.

After the coaches were reinstated, plaintiffs were heartbroken, shocked, and felt betrayed. Plaintiffs pleaded with Lydum and other school officials to fix their basketball program.

127.

On or about April 4, 2024, Dawkins met with Lydum to see what, if anything could be done. Lydum said there was not a lot that could be done given the investigator's findings.

128.

On or about April 4, 2024, Hopkins emailed members of the Board of Trustees and Lydum stating that the team felt betrayed that the university would reinstate the coaches and that the team would like to meet with everyone on the Board.

/////

/////

PAGE 36 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

129.

On or about April 10, 2024, A. McClave provided testimonies from plaintiffs to the board members informing them that no amount of "I'm sorry" can fix what plaintiffs endured. A. McClave stated that the Board was silencing athletes for complaining about abuse.

130.

On or about April 12, 2024, C. McClave emailed Betty Komp, Board Trustee, and Evan Source, Secretary of the Board of Trustees providing requested documentation regarding plaintiffs asking Randi Lydum to meet regarding the coaches. On or about April 12, 2024, A. McClave emailed members of the Board and Peters, requesting a meeting. On or about April 15, 2024, Peters replied confirming that he had read plaintiffs' testimonies and materials sent to the GNAC Commissioner, but that the investigation did not substantiate their allegations of player endangerment. Peters stated that "the coach will make decisions about the roster that best aligns with the future direction of the team."

131.

On or about April 13, 2024, C. McClave emailed Komp, Source, and Nair regarding the complaints.

132.

Instead of informing plaintiffs who made complaints against the coaches that their places on the team were not in jeopardy and that plaintiffs could not be retaliated against for their complaints, on or about April 2, 2024, Lydum gave defendant Peatross discretion as to whether to retain plaintiffs on the team for the 2024-2025 season and required plaintiffs to meet with Peatross to discuss their retention. Plaintiffs had never been required to have such a meeting in

PAGE 37 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    the past to request to remain on the team for the next season and that was not the standard

2    practice.

3                                         133.

4          Within the following week or so, Coaches Peatross and Marlow invited plaintiffs Baker,

5    Noyes, Arnold, Dawkins, Ramos, and Tu'ivai to meet with them to discuss returning to the team.

6    A. McClave and Hopkins, the only other plaintiffs with remaining eligibility, were not given the

7    option by Peatross and Marlow to meet with them to discuss returning to the team.

8                                         134.

9          Reasonable persons in plaintiffs' position would not put themselves in the position to

10   meet with their abusive coaches and ask to remain on a team where they would continue to be

11   subjected to that abuse. Plaintiffs Arnold and Tu'ivai did not meet with Peatross because they did

12   not feel that it was right to be forced to meet with their abusive coaches to "ask" to remain on the

13   team, something the plaintiffs had never been required to do before. Plaintiff Baker did not meet

14   with Peatross because she reasonably entered the transfer portal at a time when she could obtain

15   an athletic scholarship. Arnold, Tu'ivai, and Baker also learned that other plaintiffs who met with

16   Peatross were not being allowed to remain on the team, as alleged below in paragraph 135.

17                                        135.

18         Nonetheless, some plaintiffs felt they had no choice, because it was too late to enter the

19   transfer portal and have any real option of obtaining athletic scholarships, and they would need

20   to remain on the WOU basketball team to maintain their athletic scholarships. On or about April

21   11, 2024, Noyes met with Peatross and informed Peatross that she could not afford to lose her

22   athletic scholarship and needed to remain on the team. Coach Peatross told Noyes that she was

23

PAGE 38 – COMPLAINT
Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   not "good for their culture." In or around April 2024, Dawkins also met with Peatross and was

2   told she would not be allowed to remain on the team for similar reasons.

3                                          136.

4          As was foreseeable, defendant Peatross did not allow any plaintiff or any other player

5   who made complaints about her to remain on the team for the 2024-2025 season. Defendant

6   Peatross only allowed two players to remain on the team –Youngblood and Pedrojetti – the two

7   players who did not make complaints against the coaches. All 12 remaining players, absent those

8   with no remaining eligibility, were either constructively discharged or directly terminated from

9   the team, including plaintiffs Arnold, Baker, Dawkins, Hopkins, A. McClave, Noyes, and

10  Tu'ivai.

11                                         137.

12         The coaches then changed the locker room code, which restricted all plaintiffs from using

13  the basketballs and tried to kick them out of the weight room.

14                                         138.

15         On or about April 23, 2024, every plaintiff with remaining athletic eligibility, Arnold,

16  Baker, Dawkins, Hopkins, A. McClave, Noyes, and Tu'ivai had their athletic scholarships

17  withdrawn by the WOU financial aid office due to their "separation from the team."

18                                         139.

19         On or about April 27, 2024, Hopkins complained to Crosswhite, Peters, and the WOU

20  financial aid office that she was not given the opportunity to have a reinstatement meeting with

21  the coaches and requested a copy of WOU's retaliation policy.

22  /////

23  /////

PAGE 39 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

140.

On or about that same day, Noyes' mother contacted Lydum and requested her to make things right after Noyes was kicked off the team. Lydum did not respond.

141.

On or about that same day, plaintiff Hopkins' father also contacted the Board of Trustees about WOU revoking players' scholarships and received no response.

**INJURY**

142.

The coaches and WOU's unlawful conduct had a profound effect on plaintiffs emotionally. Some plaintiffs would go home exhausted emotionally, physically, and mentally.

143.

The physical abuse also led to social isolation. Plaintiffs socially withdrew from their friends because they were too tired to hang out, participate in any social outing because they felt too drained, and stopped going home to visit their parents.

144.

The over-exhaustion and physical punishment also led to other physical manifestations and symptoms such as weight loss, lack of sleep, hair loss, and eating disorders.

145.

Arnold is staying at WOU. She has three years of eligibility remaining, but because she was terminated from the team, she cannot play basketball while at WOU. Arnold had an $8,000 athletic scholarship, which was withdrawn by WOU after she was terminated from the team. She also incurred $14,505 in medical expenses due to her knee injury and surgery.

/////

PAGE 40 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2ⁿᵈ Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

146.

Defendants' conduct has caused plaintiff Arnold economic damages in an amount to be determined at trial, but currently estimated to be $22,505 for loss of her scholarship and medical expenses.

147.

Arnold lost 10-15 pounds from the excessive running and not being able to eat proper meals, as well as due to her anxiety. Arnold was exhausted the entire season – emotionally, physically, and mentally. She would come home from practice and lay on the floor for hours unable to move. She called her parents and cried while telling them how exhausted she felt in every aspect of her life. Although Arnold has three years of eligibility remaining, the treatment from these coaches has driven her to the point where she does not want to pick up a basketball ever again. Countless hours in the gym, years of club basketball, and huge tournaments, missed dances, and huge sacrifices her and her family made all seem like it was for nothing. Her mental health has extremely suffered from repeatedly seeking help but not being taken seriously. Stepping away from basketball – her first love – is devastating. Giving up basketball, a huge part of her life, simply because she spoke up, is crushing to her spirit. She has lost her identity as an athlete and is struggling to transition form an athlete to normal life.

148.

Defendants' conduct has caused plaintiff Arnold noneconomic damages in an amount to be determined at trial, but estimated to be $3,000,000.

149.

Baker was a redshirt freshman with three years of eligibility left. Baker had a $6,000 athletic scholarship, which she lost when defendants failed to protect her from abuse, retaliated

PAGE 41 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   against her, and constructively discharged her from the team, causing her to transfer to another

2   university. Baker will be playing basketball at the University of Mount Saint Vincent this fall,

3   where she will be paying more in tuition. The difference in tuition is $29,964 per year. She has

4   also had mental health counseling as a result of defendants' actions and has incurred counseling

5   expenses in an estimated amount of $2,400 and will incur future counseling costs.

6                                                    150.

7          Defendants' conduct has caused plaintiff Baker economic damages in an amount to be

8   determined at trial, but currently estimated to be $91,992, in the form of the loss of scholarship

9   and/or increased tuition, as well as future counseling costs in an amount to be determined.

10                                                   151.

11         Playing basketball at WOU was a dark spot on Baker's basketball career. Peatross and

12  Marlow took away her confidence, her voice, and what she loves most – basketball. Baker

13  learned from Coaches Peatross and Marlow the person she never wants to be – and that is the

14  coaches she had at WOU. Baker lost 15 pounds due to excessive exercise and her inability to eat

15  due to anxiety. Baker was too exhausted and drained to go to class, do schoolwork, and would

16  cram for everything at the last minute when there were deadlines. Baker developed severe

17  anxiety due to the extreme physical, verbal, and emotional distress the coaches placed on her

18  during the season. She suffered from severe panic attacks. Baker lost contact with her friends

19  because she was too exhausted to reach out and too sad to continue talking to many of her

20  friends. She isolated herself in her room and felt like nobody understood how hard it was for her.

21                                                   152.

22         Defendants' conduct has caused plaintiff Baker noneconomic damages in an amount to

23  be determined at trial, but estimated to be $3,000,000.

PAGE 42 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

153.

Dawkins was a redshirt sophomore with two years of eligibility remaining. Dawkins has transferred to Northern Illinois University, where she will be playing basketball in the fall. Dawkins experienced significant emotional distress due to the coaches' abusive tactics and retaliatory conduct. She lost 15 pounds due to stress and overexertion, suffered hair loss, and developed an eating disorder from which she still suffers. Defendants' conduct caused Dawkins anxiety, depression, and social isolation. Because trusted adults harmed her and failed to protect her, she also has difficulty trusting others. Although she is able to play basketball at a new school, Dawkins is now thousands of miles away from home and away from her support system, further suffering from isolation and depression. Dawkins is in the process of getting into mental health counseling and will incur counseling expenses as a result of defendants' actions.

154.

Defendants' conduct has caused plaintiff Dawkins economic damages in an amount to be determined at trial.

155.

Defendants' conduct has caused plaintiff Dawkins noneconomic damages in an amount to be determined at trial but estimated to be $3,000,000.

156.

Hopkins was a freshman guard with three years of eligibility remaining. She had an athletic scholarship for $6,000, which was withdrawn when she was terminated from the team. Hopkins is transferring to George Fox University, where she was unable to obtain an athletic scholarship because of the late entry into the portal. She will pay approximately $25,000 more per year in tuition for the next three years and is incurring commuting costs of approximately

PAGE 43 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   $5,000 per year. She has also had mental health counseling as a result of defendants' actions and

2   will have counseling in the future.

3                                       157.

4       Defendants' conduct has caused plaintiff Hopkins economic damages in an amount to be

5   determined at trial but currently estimated to be $96,000, in the form of loss of scholarships,

6   and/or the cost of increased tuition, as well as future counseling expenses in an amount to be

7   determined.

8                                       158.

9       Hopkins lost 10 pounds from excessive running. Hopkins lost sleep due to anxiety over

10  what would happen the next day, and her school year was consumed with pain and heartache.

11  Hopkins was on the phone with her parents for hours to help her get through the hours after the

12  abusive practices. In addition, Hopkins suffered serious reputational harm and anxiety due to

13  Peatross' slanderous and false police report and misrepresentations about her to the police and to

14  campus personnel. Hopkins felt helpless and alone. She also fears how Peatross' false report and

15  lies about her character will continue to affect her future. She has lost all trust in adults and a

16  system that was supposed to protect her, but instead retaliated against her, protected her abusers,

17  and took her basketball career away from her.

18                                      159.

19      Defendants' conduct has caused plaintiff Hopkins noneconomic damages in an amount to

20  be determined at trial but estimated to be $4,000,000.

21                                      160.

22      A. McClave was a junior guard with one year of eligibility remaining. A. McClave

23  suffered a serious knee injury due to the intentional injury caused by Coach Marlow. She has

PAGE 44 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    medical bills that, to date, are estimated at $22,000.00. She also had an athletic scholarship for

2    $10,000, which was withdrawn after she was terminated from the team. A. McClave is staying at

3    WOU for her senior year, which is the best decision for her academically. However, because she

4    was terminated from the team, she cannot play basketball.  A. McClave has also had mental

5    health counseling as a result of defendants' actions, with counseling bills currently estimated at

6    $2,280.

7                                        161.

8           Defendants' conduct has caused plaintiff A. McClave economic damages in an amount to

9    be determined at trial but currently estimated to be in excess of $34,280, in the form of past and

10   future medical and counseling expenses, and lost tuition and scholarships.

11                                       162.

12          Defendants' conduct has caused A. McClave serious emotional distress. A. McClave

13   suffered from depression, anxiety, humiliation, stress, and constant fear. She cried nearly every

14   day of the season. Her self-esteem suffered due to the bullying and retaliation she experienced

15   from the coaches. There were points in the season where she thought about quitting, harming

16   herself and even struggled with suicidal ideation. She suffered from panic attacks, would shake,

17   and couldn't breathe. Her anxiety was so bad that she would struggled to keep her food down

18   without vomiting. Her coaches' comments about her body triggered negative body images about

19   herself. She lost approximately 22 pounds. She would sleep nearly all day outside of practice.

20   She lost nearly all enjoyment in life. She withdrew from her friends and social life and became

21   extremely isolated. She felt it was the darkest time in her life. A. McClave really struggled in

22   school and was constantly emailing professors to ask for extensions. A. McClave has been

23

PAGE 45 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    stripped of the one thing in life that made her feel most like herself. She grieves the loss of

2    basketball and all it meant to her.

3                                         163.

4         Defendants' conduct has caused plaintiff A. McClave noneconomic damages in an

5    amount to be determined at trial but estimated to be $3,000,000.

6                                         164.

7         Defendants' conduct has caused C. McClave serious emotional harm. C. McClave was a

8    fifth-year senior guard during the 2023-2024 season with no remaining eligibility.  Despite the

9    early termination of the season, C. McClave was name All-GNAC Honorable Mention, finishing

10   the season fourth in the conference in scoring at 17.0 PPG,[1] tenth in assists, second in steals, and

11   fifth in minutes per game.[2] Because of the cancellation of the season, C. McClave lost out on the

12   opportunity to obtain higher honors of first team or a chance at player of the year in the

13   conference. C. McClave has no remaining eligibility left, and defendants robbed her of her

14   experience of her last year of basketball. C. McClave was so stressed during the season that she

15   would get sick to her stomach, be riddled with anxiety, would wake up at 3:00 AM, and not be

16   able to get back to sleep. C. McClave became extremely depressed, feeling that she had confided

17   to trusted adults without anyone helping. C. McClave was defeated, tired, and stressed due to the

18   coaches' abusive tactics, their retaliatory conduct, and WOU officials' failure to correct it.

19   /////

20   /////

21

22
_____
[1] PPG refers to an average Points Per Game.
23   [2] FG refers to Field Goal Percentage, which measures the success rate of a player's field goals.
Field goals include any two-point, or three-point shots taken during live play.

PAGE 46 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

165.

Defendants' conduct has caused plaintiff C. McClave noneconomic damages in an amount to be determined at trial, but estimated to be $3,000,000.

166.

Noyes was a junior forward with one year of eligibility remaining. Noyes had an athletic scholarship worth $12,000, which WOU withdrew after it terminated her from the team. Noyes is staying at WOU, which is the best decision for her academically. However, because she was terminated from the team, she cannot continue to play basketball.

167.

Defendants' conduct has caused plaintiff Noyes economic damages in an amount to be determined at trial but currently estimated to be $12,000 for her lost scholarship.

168.

Noyes lost 15 pounds due to excessive cardio exercise and not refueling her body properly as a result of exhaustion and anxiety. Noyes complained to her professors through the school year, requiring extensions on assignments because basketball was taking all of her energy, and she was struggling. Despite her professors being accommodating, Noyes stopped attending class most of the winter quarter and part of the spring quarter because she was extremely stressed. She dropped one class in the spring because she was going to fail, and Noyes was forced to turn in poorly done assignments because she lacked the mental capacity to do a good job. Going through the season had a profound effect on Noyes' mental health. It was the most toxic, uncomfortable, and degrading environment that she had ever experienced in her entire basketball career. Noyes was filled with such anxiety about what would happen at practice the next day she would throw up and not be able to sleep nights, knowing plaintiffs would have to

PAGE 47 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  run the next day for punishment. She cried after practice weekly and became extremely

2  depressed. Noyes regretted transferring to WOU and felt trapped because she couldn't afford to

3  lose her scholarship. She contemplated suicide mid-season because she felt so suffocated and

4  miserable, but knew she had to stay. Noyes felt she had no control over her life and wanted to

5  take back her power. These thoughts overcame her as the season started to get progressively

6  worse. After Noyes was terminated from the team, she was reported to the WOU's counseling

7  center twice as a student of concern that might self-harm. Noyes shut down and would become

8  short with her family and friends. She withdrew from everyone who wasn't on the team because

9  nobody else could understand the toll it was taking on her and it led to a break-up with her

10  significant other. Losing the sport that she worked for her whole life is extremely painful to

11  Noyes and breaks her hearts. She feels she has lost a piece of her core and identity.

12                                      169.

13       Defendants' conduct has caused plaintiff Noyes noneconomic damages in an amount to

14  be determined at trial but estimated to be $3,000,000.

15                                      170.

16       Ramos was a junior guard with one year of eligibility remaining. Ramos lost 15-20

17  pounds and has trouble sleeping due to stress and anxiety, and Ramos was getting hives and had

18  to take Benadryl for sleep almost every night because of stress. Ramos sustained a concussion

19  during one of the "kill or be killed" practices.  Ramos' schoolwork suffered; she started to do

20  poorly on assignments and fell behind in school. Ramos called her mother nearly every night,

21  telling her that she couldn't take it anymore. Ramos found herself taking her emotions out on her

22  family and friends and isolated herself from her friends and often stayed in her room. Ramos is

23  taking a year off from the university because she needs a break from the emotional stress of the

PAGE 48 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   last year. Ramos is unsure whether she will return to basketball after the negative and toxic

2   experiences she had at Western Oregon University. Ramos is extremely upset because she

3   recognizes as a young Native American woman, playing basketball was dream that not a lot of

4   kids in her culture get to realize.

5                                          171.

6          Defendants' conduct has caused plaintiff Ramos noneconomic damages in an amount to

7   be determined at trial but estimated to be $3,000,000.

8                                          172.

9          Tu'ivai was a sophomore forward with two years of eligibility left. Due to a season

10  ending injury as a result of the physical abuse perpetuated by Peatross and Marlow, Tu'ivai did

11  not play any games during the 2023-2024 season. After Tu'ivai was terminated from the team,

12  her $10,000 athletic scholarship was withdrawn, and she has two years of eligibility remaining.

13  Basketball was Tu'ivai's life, escape, and a way of channeling her emotions. Tu'ivai has tried

14  overcoming her injury but has been unable to and may never play basketball again. Defendants'

15  conduct has caused Tu'ivai significant emotional distress. She cried every night because of how

16  sore her body was before she got injured, and because of her injury, suspension, and abuse from

17  the coaches. During her suspension, Tu'ivai missed critical parts of team bonding, suffered from

18  social isolation, fell into a deep depression with thoughts of suicide, her grades suffered, and she

19  was too afraid to talk to anyone about it. Tu'ivai lost the love of the game because Peatross and

20  Marlow made the sport more anxiety driven and less lovable and enjoyable. Basketball was

21  Tu'ivai's love and her escape – a way of letting out her anger and her emotion. She grew up

22  playing with her sisters, and she feels that defendants took that from her. The abusive tactics

23  affected her mental health, and no one listened to them and it just got worse. She suffered from

PAGE 49 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   depression and anxiety, lack of sleep, social isolation, loss of enjoyment of life, and suicidal

2   ideation. Her school work suffered tremendously and her grades suffered as a result.

3                                                      173.

4        Defendants' conduct has caused plaintiff Tu'ivai economic damages in an amount to be

5   determined at trial.

6                                                      174.

7        Defendants' conduct has caused plaintiff Tu'ivai noneconomic damages in an amount to

8   be determined at trial but estimated to be $3,000,000.

9                                                      175.

10        Plaintiffs have mitigated their damages.

11                                    **FIRST CLAIM FOR RELIEF**

12                          **42 U.S.C. § 1983 – Speech and Petition Clause**
                                        **On Behalf of All Plaintiffs**
13              **Against Defendants Peatross, Marlow, Lydum, Larson, and Peters**

14                                                      176.

15        Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

16                                                      177.

17        Defendants were at all relevant times acting under the color of state law.

18                                                      178.

19        Plaintiffs' complaints constituted Constitutionally protected activities of speech and/or

20   petitioning the Government.

21                                                      179.

22        Defendants punished and/or otherwise retaliated against plaintiffs for reporting,

23   opposing, and speaking out against ongoing abusive coaching tactics by taking actions against

PAGE 50 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  plaintiffs that would lead ordinary student athletes in plaintiffs' position to refrain from

2  complaining about abusive coaches in order to remain on the team.

3                                   180.

4        Plaintiffs' protected constitutional activity was a substantial or motivating factor in

5  defendants' adverse and retaliatory actions toward plaintiffs.

6                                   181.

7        It is clearly established law that school officials may not retaliate against student-athletes

8  based on their protected speech.

9                                   182.

10       It is clearly established law that protected speech includes complaints and reports to a

11  university about an abusive coach.

12                                  183.

13       Defendants' conduct has caused plaintiffs economic and noneconomic damages.

14                                  184.

15       Plaintiffs are entitled to attorney fees, costs, and disbursements pursuant to 42 U.S.C. §

16  1988(b).

17                        **SECOND CLAIM FOR RELIEF**

18                   **Intentional Infliction of Emotional Distress**
                          **On Behalf of All Plaintiffs**
19               **Against Defendants WOU, Peatross, and Marlow**

20                                  185.

21       Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

22  /////

23  /////

PAGE 51 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

186.

From January 3, 2024, until the season ended on February 12, 2024, defendants Peatross and Marlow, intended to cause plaintiffs severe emotional distress.

187.

Defendants did in fact cause plaintiffs severe emotional distress.

188.

Defendants' conduct was an extraordinary transgression of the bounds of socially tolerable behavior.

189.

Peatross made an intentionally false and outrageous claim to the police and WOU officials that Hopkins assaulted her and caused her serious injury, knowing it was false and lacking any reasonable grounds to believe the accusation as true.

190.

Defendants Peatross and Marlow were at all times acting within the course and scope of their employment for defendant WOU and WOU is vicariously liable for their actions. Plaintiffs also maintain this action against Peatross and Marlow individually pursuant to ORS 30.265(4).

191.

Defendants' conduct has caused plaintiffs economic and noneconomic damages.

/////
/////
/////
/////
/////

PAGE 52 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

Exhibit A
Page 352 of 417

**THIRD CLAIM FOR RELIEF**

**Use of Police with Intent to Harm**
**ORS 30.845**

**On Behalf of Plaintiff Hopkins**
**Against Defendants WOU and Jessica Peatross**

192.

Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

193.

On or about February 12, 2024, Defendant Peatross knowingly caused a police officer to arrive at the WOU campus in Monmouth to contact plaintiff Hopkins.

194.

Defendant Peatross acted with the intent to cause Plaintiff Hopkins to feel harassed, humiliated or embarrassed, and/or damage her reputation or standing within the WOU community and/or the community at large.

195.

Defendant Peatross was at all times acting within the course and scope of her employment for defendant WOU and WOU is vicariously liable for her actions. Plaintiff Hopkins also maintains this action against defendant Peatross individually pursuant to ORS 30.265(4).

196.

Defendants' conduct was a but-for cause of plaintiff Hopkins's harm.

197.

Plaintiff Hopkins is entitled to emotional distress damages or a minimum of statutory damages in the amount of $250.

PAGE 53 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1     198.

2     Plaintiff is entitled to attorney fees, costs, and disbursements pursuant to ORS 30.845.

3     **THIRD CLAIM FOR RELIEF**

4     **Negligence**
      **On Behalf of All Plaintiffs**
5     **Against Defendants WOU, Peatross, and Marlow**

6     199.

7     Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

8     200.

9     Defendants Peatross and Marlow had a duty to act with reasonable care to not expose

10    plaintiffs to a foreseeable risk of harm.

11    201.

12    From January 3, 2024, to February 12, 2024, Peatross and Marlow were negligent in

13    multiple ways, including but not limited to the following:

14        a.    Failing to take reasonable steps to ensure the physical health and safety of

15            plaintiffs.

16        b.    Failing to take reasonable steps to avoid physically injuring plaintiffs.

17        c.    Making physical contact with plaintiffs in a way that was not reasonable under the

18            circumstances.

19        d.    Requiring plaintiffs to engage in physical activity that was not reasonable under

20            the circumstances.

21        e.    Holding unreasonable practices in length and number.

22        f.    Organizing workouts at times that were not reasonable under the circumstances.

23        g.    Using physical workouts, running, and practices as punishment.

PAGE 54 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1     h.    Endangering plaintiffs needlessly.

2     i.    Violating NCAA Bylaw 17.1.6., which defendants knew or should have known

3     about by allowing or requiring the players to engage in excessive, and

4     unreasonably lengthy, practices and using physical activity as punishment.

5     202.

6     Defendants' negligence was the but-for cause of plaintiffs' physical injuries.

7     203.

8     Defendants Peatross and Marlow were at all times acting within the course and scope of

9 their employment for defendant WOU and WOU is vicariously liable for their actions. Plaintiffs

10 also maintain this action against Peatross and Marlow individually pursuant to ORS 30.265(4).

11     204.

12     Defendants' conduct has caused plaintiffs economic and noneconomic damages.

13     **FOURTH CLAIM FOR RELIEF**

14     **Negligent Retention and Supervision**
**On Behalf of All Plaintiffs**

15     **Against WOU**

16     205.

17     Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

18     206.

19     Beginning on November 22, 2023, defendant WOU, by or through its agents knew

20 plaintiffs were subjected to unlawful abuse.

21     207.

22     WOU is directly liable for its own negligence. WOU had an obligation and duty to

23 exercise reasonable care to protect its collegiate athletes against excessive practices, bullying,

PAGE 55 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   dehydration, forced practicing while ill, disregarding of injuries, and other serious and

2   foreseeable risks to plaintiffs' health and safety.

3                                        208.

4        Beginning on January 3, 2024, WOU was negligent in retaining Peatross and Marlow by

5   failing to conduct a reasonable due diligence investigation upon receiving complaints and being

6   made aware that Peatross and Marlow engaged in abusive coaching tactics resulting in physical

7   and mental injuries to players at WOU, prior abuse at Salem University, and had lied on their

8   resumes and lacked requisite qualifications.

9                                        209.

10       Had WOU conducted a reasonable due diligence investigation, WOU would have

11  discovered that Peatross and Marlow were not qualified for retention, and that the coaches had a

12  pattern of abuse against players on their team, and that there was a foreseeable risk of harm to

13  plaintiffs.

14                                       210.

15       WOU failed to reasonably supervise Peatross and Marlow, despite several complaints of

16  verbal, physical, and mental abuse and retained the coaches even after being made aware of the

17  actions of their abusive conduct.

18                                       211.

19       WOU failed to act reasonably in its investigation of the abuse and negligently retained

20  Coaches Peatross and Marlow in light of the knowledge it had obtained from plaintiffs and their

21  parents.

22  /////

23  /////

PAGE 56 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

212.

WOU failed to be responsive and instead negligently failed to protect their collegiate athletes from abuse, neglect, or other forms of maltreatment.

213.

Defendants' negligent supervision and retention was a but-for cause of plaintiff's harm and plaintiffs are entitled to economic and noneconomic damages.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court provide trial by jury and award the following relief:

1.  An order applicable to plaintiffs still attending WOU that:

    a.  Requires defendant WOU to reinstate plaintiffs who have not transferred to other teams and who have remaining eligibility to the WOU basketball team;

    b.  Requires defendant WOU to immediately terminate Peatross's and Marlow's employment;

    c.  Requires defendant WOU to implement comprehensive training on the prevention of abuse, harassment, and retaliation for all coaching staff and athletic department employees;

    d.  Requires defendant WOU to appoint an independent monitor to oversee the athletics department to ensure compliance with player safety for a period of two years;

    e.  Requires defendant WOU to allow the independent monitor to conduct a thorough investigation and report the findings to the Oregon Department

PAGE 57 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

of Education and the NCAA to ensure that all policies and procedures are revised to prevent future occurrences of abuse by coaches and retaliation for reports of abuse by coaches;

    f.    Requires defendant WOU to provide counseling and support services to current and former players by the abusive conduct;

    g.    Requires defendant WOU to establish a confidential reporting system for players to report abuse, harassment, or other misconduct without the fear of retaliation;

2.    Economic damages in the amount of $256,777 for all claims;

3.    Noneconomic damages in the amount of $28,000,000 for all claims;

4.    On Plaintiff's First and Third Claims for Relief, an award of reasonable attorneys' fees, costs and disbursements;

5.    An award of prejudgment interest on all damages at the highest rate allowed by law; and

6.    Grant such other and further relief as the Court deems just and equitable.

DATED this 29th day of January, 2025.

| SHENOA PAYNE ATTORNEY AT LAW PC | KAFOURY & MCDOUGAL |
|---|---|
| */s/ Shenoa Payne* | */s/ Jason Kafoury* |
| Shenoa Payne, OSB No 084392 | Jason Kafoury, OSB #091200 |
| spayne@paynelawpdx.com | jkafoury@kafourymcdougal.com |
| Attorney for Plaintiffs | Attorney for Plaintiffs |

    Plaintiffs hereby provide notice of their intent to amend to include a claim for punitive damages on Plaintiffs' First Claim for Relief.

PAGE 58 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MARION

GRACIE ARNOLD, an individual; GRETTA BAKER, an
individual; KIYLYNN DAWKINS, an individual; HANNE
HOPKINS, an individual; ANA MCCLAVE, an individual;
CALI MCCLAVE, an individual; JODI NOYES, an
individual; KAILIANA RAMOS, an individual; and PI'O
TU'IVAI, an individual,

                        Plaintiff,

      v.

WESTERN OREGON UNIVERSITY, a public university of
the State of Oregon; JESSICA PEATROSS, in her individual
capacity; DEMENTRUS MARLOW, in his individual
capacity; JESSE PETERS,
in his individual capacity; MALISSA LARSON; in her
individual capacity; and RANDI LYDUM, in her individual
capacity,

                        Defendant.

Case No. 25CV05549
SUMMONS

TO:    Jessica Peatross
       4035 Outward Rd SE, Apt 232
       Salem OR 97302

       You are hereby required to appear and defend the complaint filed against you in the above entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.

**NOTICE TO THE DEFENDANT: READ THESE PAPERS
CAREFULLY!**

       You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service upon the plaintiff.

       If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the *Oregon State Bar's Lawyer Referral Service* at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

SIGNATURE OF ATTORNEY/AUTHOR FOR PLAINTIFF

Jason Kafoury, OSB No. 091200
ATTORNEYS/AUTHOR'S NAME (TYPED OR PRINTED)   BAR NO. (IF ANY)

Kafoury & McDougal, 411 SW Second Ave, Ste 200

Portland OR 97204      (503) 224-2647
CITY      STATE      ZIP      PHONE

Jason Kafoury, OSB No. 091200
TRIAL ATTORNEY IF OTHER THAN ABOVE (TYPED OR PRINTED)    BAR NO.

STATE OF OREGON    )
                    ) ss.
County of Multnomah    )

       I, the undersigned attorney of record for the plaintiffs, certify that the foregoing is an exact and complete copy of the original summons in the above entitled action.

                Jason Kafoury, OSB No. 091200, Attorney of Record for
                Plaintiffs

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

                Jason Kafoury, OSB No. 091200, Attorney of Record for
                Plaintiffs

1/29/2025 7:50 AM

1

2

3

4          IN THE CIRCUIT COURT OF THE STATE OF OREGON

5              FOR THE COUNTY OF MARION

6  GRACIE ARNOLD, an individual; GRETTA        Case No. 25CV05549
   BAKER, an individual; KIYLYNN
7  DAWKINS, an individual; HANNE               COMPLAINT
   HOPKINS, an individual; ANA MCCLAVE,        (First Amendment Retaliation – Speech and
8  an individual; CALI MCCLAVE, an             Petition Clause (42 U.S.C. § 1983),
   individual; JODI NOYES, an individual;      Intentional Infliction of Emotional Distress,
9  KAILIANA RAMOS, an individual; and PI'O     Negligence, Negligent Retention and
   TU'IVAI, an individual,                     Supervision, Use of Police with Intent to
10                                             Harm (ORS 30.845))
                   Plaintiffs,
11                                             PRAYER: $28,256,777
12        v.                                   ORS 21.160(1)(d)

13 WESTERN OREGON UNIVERSITY, a                NOT SUBJECT TO MANDATORY
   public university of the State of Oregon;   ARBITRATION
14 JESSICA PEATROSS, in her individual
   capacity; DEMENTRUS MARLOW, in his          JURY TRIAL DEMANDED
15 individual capacity; JESSE PETERS,
   in his individual capacity; MALISSA
16 LARSON; in her individual capacity; and
   RANDI LYDUM, in her individual capacity.

17                 Defendants.

18

19     Plaintiffs demand a jury trial and allege the following:

20                      **INTRODUCTION**

21                            1.

22     In collegiate sports, coaches have a profound and long-lasting impact on the athletes that

23  they coach. The positive impact of coaches on a collegiate athlete's life can include building a

PAGE 1 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

supportive environment that encourages collaboration, teamwork, mutual respect, mentorship, and trust. Unfortunately, some coaches choose fear, intimidation, and abusive coaching practices as a method to "motivate" collegiate athletes. Studies have shown that these abusive practices impact a collegiate athlete's anxiety, stress levels, burnout, and their mental health.[1]

2.

Plaintiffs, all players on the Western Oregon University Women's Basketball Team during the relevant time period, experienced a myriad of abusive coaching tactics at the hands of defendants Coach Jessica Peatross and Coach Dementrus ("DJ") Marlow. Defendants Peatross and Marlow physically abused plaintiffs through using excessive and unreasonable amounts of exercise as punishment contrary to NCAA guidelines provided to all NCAA Division II schools, and emotionally abused and humiliated plaintiffs through disparaging comments about their bodies, tearing them down, belittling them, and telling them they were worthless.

3.

Plaintiffs made multiple complaints and reports about the abuse to Western Oregon University officials. The First Amendment protects students from retaliation for exercising their rights of petition and free speech, including complaining about abusive coaching practices. Despite these clear protections, defendants all took actions to retaliate against plaintiffs, including but not limited to prematurely ending the women's basketball team's 2023-2024 season. Furthermore, defendants terminated 10 out of 12 players from the team – those that reported the abuse – and terminated their athletic scholarships, deciding only to keep the two players on the team who did not complain about the coaches' conduct. Defendants' conduct

---

[1] Mottaghi M., The relationship between coaches' and athletes' competitive anxiety, and their performance. *Iran Journal of Psychiatry Behavior Science*, 7(2): 68-76 (2013).

PAGE 2 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.payneclawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  constitutes, among other things, unlawful First Amendment Retaliation under 42 U.S.C. § 1983,

2  intentional infliction of emotional distress, negligence, and negligent retention and supervision.

3  <u>**VENUE**</u>

4  4.

5      Venue in Marion County is appropriate because defendant Western Oregon University

6  has a campus in Salem, Oregon, and conducts sustained, regular business activity in Marion

7  County.

8  <u>**PARTIES**</u>

9  **Plaintiffs**

10  4.

11      Plaintiffs were at all relevant times student athletes enrolled at Western Oregon University

12  and players on the 2023-2024 Women's basketball team.

13  5.

14      Plaintiff Gracie Arnold was at all relevant times a sophomore forward during the 2023-

15  2024 season.

16  6.

17      Plaintiff Gretta Baker was at all relevant times a redshirt freshman during the 2023-2024

18  season.

19  7.

20      Plaintiff Kiylynn Dawkins was at all relevant times a redshirt sophomore during the

21  2023-2024 season.

22  /////

23  /////

PAGE 3 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

8.

Plaintiff Hanne Hopkins was at all relevant times a freshman guard during the 2023-2024 season.

9.

Plaintiff Ana McClave was at all relevant times a junior guard during the 2023-2024 season.

10.

Plaintiff Cali McClave was at all relevant times a fifth-year senior guard during the 2023-2024 season.

11.

Plaintiff Jodi Noyes was at all relevant times a junior forward during the 2023-2024 season.

12.

Plaintiff Kailiana Ramos was at all relevant times a junior guard during the 2023-2024 season.

13.

Plaintiff Pi'o Tu'ivai was at all relevant times a sophomore forward during the 2023-2024 season.

**Defendants**

14.

Defendant Western Oregon University (WOU) is a public university located in Monmouth, Oregon. WOU has a student population of approximately 4,500 students and offers a

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   range of undergraduate and graduate programs. Defendant, WOU is a public body of the State of

2   Oregon and a member institution of the NCAA Division II schools.

3                                          15.

4        Notice of this claim was timely provided to defendant WOU within 180 days of the

5   conduct described herein.  On or about July 1, 2024, plaintiffs and WOU entered in a tolling

6   agreement that tolled the time period for filing a tort claim notice from July 1, 2024, through

7   September 1, 2024 (the tolling period). On September 1, 2024, plaintiffs sent WOU a timely

8   notice of their intent to file a claim for damages via email and regular mail to WOU's counsel of

9   record.

10                                         16.

11       Defendant Jessica Peatross was at all relevant times the head coach for WOU's Women's

12  Basketball team during the 2023-2024 season.

13                                         17.

14       Defendant Dementrus ("DJ") Marlow was at all relevant times the assistant coach and

15  recruiting coordinator for the WOU's Women's Basketball team during the 2023-2024 season.

16                                         18.

17       Defendant Jesse Peters was and is at all relevant times the President of Defendant WOU.

18                                         19.

19       Defendant Malissa Larson was at all relevant times the Associate Vice President for

20  Student Affairs and Dean of Students at Defendant WOU.

21                                         20.

22       Defendant Randi Lydum was and is at all relevant times the Executive Director of

23  Intercollegiate Athletics at Defendant WOU.

PAGE 5 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

**FACTUAL ALLEGATIONS**

21.

At all relevant times, plaintiffs were collegiate athletes on WOU's women's basketball team during the 2023-2024 basketball pre-season and regular season.

22.

During her application to become the head basketball coach at Western Oregon University, Peatross misrepresented her qualifications on her resume about having played NCAA Division I basketball at Chicago State.

**Abusive Coaching Tactics**

23.

Beginning on or around August 2023, the players' pre-season began. Peatross and Marlow's coaching tactics included putting plaintiffs through extreme, excessive, and punishing workouts in every practice throughout the season. Plaintiffs were given an unreasonable amount of sprints and long-distance runs. Plaintiffs ran timed miles, two miles, suicides,[3] and 2s, 4s, 6s, 8s, 12s, 16s, and 20s[4] an excessive number of times. Any player on the team who did not make the times were given extra amounts of conditioning and were denied gear until they made the times. Plaintiffs were forced to run until they were physically sick, their feet were bloody, they were vomiting, suffering from dehydration, extreme exhaustion, and even unwanted weight loss. Plaintiffs often left to go vomit, but were then forced to run more to make up the time they were vomiting. Plaintiffs were left little to no rest between conditioning sprints or conditioning sets.

---

[3] Suicides are a running drill where the player starts at the baseline, sprints to the free throw line, springs back to the baseline, then sprints to the half-court, sprints back to the baseline, sprints to far free throwline, back to the baseline, then sprints to the far baseline, then back.
[4] 2s, 4s, 6s, 12s, 16s, and 20s, refers to the number of sprints to the other baseline and back.

PAGE 6 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.payneclawpdx.com

KAPOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  Defendants Peatross and Marlow would become angry if plaintiffs went to the bathroom or to go

2  get water.

3                                        24.

4        During the pre-season, plaintiffs were required to do three-hour practices immediately

5  after brutal conditioning sessions of 45 minutes with little to no breaks. During the season, the

6  coaches continued to exceed practice hour limitations and give players little to no breaks.

7                                        25.

8        Defendants Peatross and Marlow set unreasonable and unattainable running objectives,

9  which no plaintiff could meet. When the objectives were not met, the coaches forced plaintiffs to

10  keep running. As a direct result, plaintiffs would suffer from cramping and vomiting.

11  Additionally, these excessively rigorous practices caused plaintiffs' emotional spirits to break,

12  and plaintiffs regularly cried during practices. The coaches used extra running and extra drilling

13  as punishment.

14                                       26.

15        When players predictably became injured as a result, Defendants Marlow and Peatross

16  required players to ignore these injures, causing injuries to become worse. Defendants Marlow

17  and Peatross punished players for injuries and retaliated against them. The coaches had a

18  mentality that players could not be "hurt" but only "hurting."

19                                       27.

20        In or around July 2023, plaintiff A. McClave informed the coaches of a previous knee

21  surgery that she had in May 2023 that she was still recovering from. The coaches told her not to

22  "make excuses" and that the reason she had to have surgery was that she was "out of shape."

23  /////

PAGE 7 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

28.

In or around August 2023, the coaches demanded A. McClave attend workouts even though she was not medically cleared from her knee surgery. A. McClave refused, and Peatross demanded to see her knee scar. In or around August 2023, the coaches told A. McClave's physical therapist over the phone that they were going to make A. McClave's conditioning a "living hell." In or around September 2023, A. McClave was still not cleared by her physical therapist to fully do all the workouts, but Peatross told A. McClave that if she did not do the workouts, then she would not play. A. McClave was also told that she was "weak" and "lazy."

29.

In or around the summer of 2023, the coaches called plaintiffs to work out and show up at open gyms, even though NCAA Division II coaches are not allowed to work out players during the summer. Peatross and Marlow told plaintiffs that if they were in town and if they didn't see them working out, that plaintiffs "weren't going to make it" and the coaches were "going to break them."

30.

On or around September 2023, plaintiffs received their preseason conditioning season. The schedule included "team activities" on it. Plaintiffs assumed those activities were team bonding activities, but the activities were more workouts. This was a way in which Defendants Peatross and Marlow subversively and intentionally overused their NCAA privileges and flouted the NCAA rules.

31.

On or around September 8, 2023, Peatross and Marlow ran plaintiffs so long and so hard that plaintiff Arnold's feet bled, which she had never experienced before.

PAGE 8 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

32.

On or around September 11, 2023, Peatross and Marlow over-trained plaintiffs for three and a half hours, leading to dehydration, extreme fatigue, and exhaustion. Peatross and Marlow punished plaintiffs if they were unable to meet the coaches' extreme time limits for conditioning.

33.

On or around September 13, 2023, plaintiff Baker experienced a right knee injury due to overuse from the extreme conditioning and basketball practices that took her out of play for the month due to the knee trauma and sprain, which required multiple and continuing physical therapy sessions.

34.

On or around September 18, 2023, plaintiff Noyes suffered an overuse injury on her right iliotibial (IT) band due to the excessive amounts of conditioning that Marlow and Peatross forced Plaintiffs to engage in. Noyes treated the injury with the athletic trainer, but Peatross and Marlow did not give Noyes the proper amount of time to fully recover, and the injury became extremely painful after timed mile runs and stadium stair workouts.

35.

On or around mid-September 2023, Peatross and Marlow required plaintiffs to run so much that they became physically sick, vomiting several times.

36.

If a player on the team made a mistake in a drill or did not complete it to the coaches' liking, Peatross and Marlow would use additional and excessive running as a form of punishment. One day, plaintiffs were forced to start practice with little to no warmup and were

PAGE 9 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    told to start with a very fast paced full court drill. Plaintiffs made mistakes, which led to the

2    coaches stopping the drill and making plaintiffs run nine down-and-backs and three suicides.

3                                                    37.

4            Plaintiffs also were forced to work out when sick or injured. Defendants Peatross and

5    Marlow accused plaintiffs of faking injuries and forced plaintiffs to work out or do conditioning

6    tests while they were injured. If a plaintiff was injured in practice, Peatross and Marlow would

7    not acknowledge the injury or stop the practice.

8                                                    38.

9            In or around mid-September 2023, plaintiff Dawkins pulled her calf and was in pain

10    every step that she took. Plaintiff Dawkins reported her injury to Peatross and Marlow, but they

11    pushed her concerns aside and started the conditioning workout. Dawkins attempted to push

12    through, but her pain increased. Dawkins then attempted to stretch and walk it off, but the pain

13    did not subside. Dawkins told Marlow that her calf was in a lot of pain and showed him that her

14    calf was bruised. Later that day following conditioning, defendant Peatross pulled Dawkins aside

15    and required her to run until Peatross told her to stop. Dawkins did not understand why she was

16    being punished for having an injury. As soon as she was told to stop, Peatross put her into live

17    play. Dawkins later required home therapy exercise and rehabilitation to get her calf back to

18    normal.

19                                                    39.

20            In or around mid-September 2023, plaintiff Tu'ivai pulled her hamstring when plaintiffs

21    were running in the cold weather due to ongoing forced excessive running. Tu'ivai kept playing

22    and running through the injury due to the coaches' theme of not being "hurt," but only "hurting."

23    A few days later, Tu'ivai injured her right knee. Tu'ivai informed defendants Marlow and

PAGE 10 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   Peatross that she felt a popping sensation as they were running a two-mile run.  Marlow and

2   Peatross disregarded her concerns and forced her to continue to practice. As a result, Tu'ivai was

3   required to obtain physical therapy for her injury and miss practice and games.

4                                              40.

5          On or around mid-September 2023, plaintiff Ramos pulled her hip or hamstring and

6   developed shin splints due to the overexertion and strain on her body caused by Defendants

7   Peatross and Marlow's excessive trainings and practices.

8                                              41.

9          On or around October 2023, the team apparently did not perform a drill to the coaches'

10  satisfaction. As a result, the coaches used running as a form of punishment. Plaintiffs ran over

11  eight 4s, four suicides, and down and back all for time, for a total of 30 minutes straight.

12                                             42.

13         In or around late October or early November 2023, plaintiff Hopkins popped her shoulder

14  out of its socket in a practice, which was extremely painful. Peatross told Hopkins that she was

15  "fine" and would not allow her to go see the athletic trainer.

16                                             43.

17         On or around November 10, 2023, during the first game away, the coaches introduced a

18  "rule" of taking the players' personal belongings during the night before a game. The coaches

19  would confiscate the players' phones and threatened to wake them up at 3:00 a.m. and force

20  them to run during the night until the sun came up if plaintiffs were caught with a phone.

21                                             44.

22         On or around November 14, 2023, during a game against George Fox University (GFU),

23  the coaches threatened plaintiffs at halftime that if they did not beat GFU by at least 20 points,

PAGE 11 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  they would be running the next day at practice. When the team failed to meet that arbitrary goal,

2  the coaches used running as form of physical punishment. Running was also regularly used as

3  punishment after the team would lose a game.

4                                                45.

5       In or around late November 2023, A. McClave developed bronchitis due to the

6  exhaustion from the over conditioning, physical abuse, and emotional abuse from the coaches.

7  Due to her bronchitis, A. McClave visited doctors three times, obtained medications, and had

8  been to the hospital. She informed the coaches and provided a doctors' note that she had

9  bronchitis. Peatross told her to go put on her shoes and that she "would practice." A. McClave

10  went to the athletic trainer to complain, and the athletic trainer stormed into the coaches' office

11  and told the coaches that A. McClave was too sick to practice. The coaches argued with the

12  athletic trainer and proceeded to laugh at A. McClave. In or around December 2023, when A.

13  McClave returned from having bronchitis, she was punished by the coaches with extra running

14  and drills.

15                                               46.

16      In or around November 2023, Marlow accused plaintiffs of drinking and being hungover

17  during practice, when in actuality plaintiffs were sick from a winter bug. Marlow forced

18  plaintiffs to run for not performing well while being sick and then told plaintiffs that they had to

19  play a game the following day.

20                                               47.

21      The coaches forced plaintiffs to miss academic classes for basketball practice. If one

22  plaintiff had a failing grade, the whole team would be forced to run as punishment.

23  /////

PAGE 12 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

48.

On many occasions, Marlow would sub in during practices and play against the team. During these times, Marlow would be unnecessarily and intentionally aggressive, which made plaintiffs fear for their physical safety and fear getting injured. Plaintiffs would play against male football players as well; however, the male football players were not nearly as aggressive as Marlow.

49.

Due to excessive running, most plaintiffs were "in the red" during jumping tests designed to see how fatigued athletes were. This meant that plaintiffs' bodies were overworked and extremely fatigued. Plaintiffs were barely able to lift weights because of exhaustion. The weight coach regularly had to revise the strength workouts because plaintiffs were too physically exhausted and weak.

50.

In or around December 2023, Peatross and Marlow stopped scheduling weights, which led to plaintiffs losing muscle, becoming weak, and suffering further injuries.

51.

Peatross and Marlow regularly violated NCAA rules, including Countable Athletically Related Activity (CARA) hours in multiple ways:

    a.    Peatross and Marlow failed to explain CARA hours to plaintiffs, and had freshmen sign the NCAA timesheet to verify that coaches were following the rules. Freshmen would be either ignorant of the rules or too scared of their new coaches to not sign.

/////

PAGE 13 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

b.   The preseason rule was eight hours total per week divided into four hours for weights and four hours for basketball. On or around September 8, 2023, the coaches put all eight hours into two days, which was contrary to the calendar provided to plaintiffs.

c.   Peatross and Marlow regularly went over CARA hours and did not follow the schedule. The schedule that was sent to WOU's athletic directors was two different groups for conditioning, four different group workouts, and an "optional" open gym. Instead, the coaches combined all those hours.

d.   "Optional" open gyms were not optional. Plaintiffs were told that anything marked "optional" on the calendar was not optional and the coaches directed it.

   i.   Any "open gym," "team activity," and "group workout" on the calendar were basketball workouts with the whole team and coaches. On or around September 12, 2023, the first violation of a "team activity" was when plaintiffs had a turf workout and then went straight into the gym to run more as their "team activity."

e.   The coaches exceeded allowed practice time every day; every practice would average three hours, sometimes with a 45-minute conditioning session right beforehand.

f.   On or around November 2023, team practice was eight days in a row, but the NCAA rule was no more than seven days in a row.

52.

Peatross and Marlow regularly violated other NCAA rules including, but not limited to:

/////

PAGE 14 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

a.    Coaching during open gyms during the summer and preseason. The coaches would intrude on the players' private workouts, which are supposed to be voluntary, and force them to go through an entire workout.

b.    Forcing the team of a public university to pray before every game and playing religious music during car rides and practice.

c.    Using running for punishment.

d.    Violating all the rules that involve practicing and overexertion of athletes.

e.    Forcing plaintiffs to miss class for practice and workouts. In or around January 2024, "shootarounds"[5] were on the calendar during class times.

f.    Forcing plaintiffs to stay more than two to a room during travel trips.

a.    Forcing plaintiffs to room with Emily Wentworth, a paid manager.

g.    Taking plaintiffs' personal possessions from them during away game trips.

h.    Peatross lying on her coaching application by stating that she played four years of Division 1 basketball at Chicago State.

**Emotional Abuse and Bullying Tactics**

53.

On or around August 2023 during the pre-season through the end of the season in February 2024, Peatross and Marlow told plaintiffs that they couldn't be friends with each other and used various tactics to pit plaintiffs against each other, such as telling one plaintiff that another plaintiff was better than they were, degrading a plaintiff in front of one of more plaintiffs, and encouraging plaintiffs to engage in degrading other plaintiffs.

/////

---

[5] "Shootaround" is an informal practice session, typically held before a game.

PAGE 15 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

54.

Beginning on or around August 2023 during the pre-season and throughout the remainder of the season, Peatross and Marlow frequently used quotes that caused division amongst the team, such as "kill or be killed," "your teammates are not your friends," and "don't help your teammates off the ground." Marlow posted negative and demeaning Tweets about the team or a plaintiff, such as "everybody wants to be a winner until it's time to prepare like a winner does" and "people don't respect the process, they only respect the payoff."

55.

On or around August 2023, during a Zoom meeting with plaintiffs, the coaches told plaintiffs that they would not be allowed to help other plaintiffs off the floor, including practice teams. Defendants Peatross and Marlow told plaintiffs they wanted to hear them "shit talk" each other and encouraged negativity.

56.

Peatross and Marlow would ask one plaintiff what they thought of another plaintiff and would tell one plaintiff they wanted to get rid of another plaintiff. Later, they would call plaintiffs "tattletales" to embarrass them. Peatross and Marlow would make fun of plaintiffs in front of the team to humiliate them. Plaintiffs felt like they were in a trap and that Peatross and Marlow would twist anything they would say.

57.

Peatross and Marlow would degrade plaintiffs in front of the team or in individual meetings. Peatross and Marlow would accuse plaintiffs of being drunk or hungover, they would single plaintiffs out for their "attitudes," and made plaintiffs feel like they weren't making an effort. Plaintiffs were told that they were "too weak" or "too emotional," to receive "criticism."

PAGE 16 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

Additionally, plaintiffs were told to "work hard" and they needed to "man up" or stop being a "bitch." These comments would be made in a tone that was bullying, snarky, and nasty. Oftentimes, Peatross and Marlow would be yelling at plaintiffs.

58.

Peatross and Marlow told plaintiffs they weren't good enough to be in the conference. Peatross and Marlow told plaintiffs that they didn't work hard even though they worked themselves into exhaustion to prove themselves. Plaintiffs were called "weak," "lazy," "soft," "dogshit," "spoiled," and "entitled." Peatross and Marlow told plaintiff Noyes she acted like the Disney character, "Eeyore," because she was too "low energy." Peatross and Marlow repeatedly questioned plaintiffs' statements that they were putting in effort, tried to make plaintiffs prove it, and told plaintiffs that they wouldn't be there next year.

59.

Defendants Peatross and Marlow also told plaintiffs they didn't believe they were injured. They would say things like "you're not hurt, you're just hurting," and told plaintiffs they were making excuses, having a bad attitude, or being lazy. Some plaintiffs went to the athletic director and told her the coaches didn't believe they were actually injured and asked her to tell the coaches that they were actually injured.

60.

Defendants Peatross and Marlow manipulated plaintiffs by lying to them and telling stories about her basketball days at Chicago State to make plaintiffs seem weak. She commented that they should be worried if they aren't contacted individually. The coaches would then contact some plaintiffs individually for meetings, or to view film, and not contact other plaintiffs, making plaintiffs feel worried and left out.

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

61.

Plaintiffs would be called in to "watch film" with Peatross and Marlow, but instead the coaches would belittle them and tell plaintiffs how "shitty" they were. If plaintiffs ever tried to express their exhaustion or struggles, they would be accused of making excuses, told that they didn't want to be there, and that so many other women would love to be in their position.

62.

On or around late October or early November 2023, Peatross and Marlow stopped a drill and required Arnold, Dawkins, and Noyes to compete against each other one-on-one in front of the team. The coaches taunted them during the drill, yelling "who wants it more" for approximately ten minutes. Plaintiffs were confused and concerned at this behavior. Arnold, Dawkins, and Noyes felt defeated and berated in front of their entire team.

63.

On or around November 2023, Peatross and Marlow started to pull A. McClave into meetings to watch film, where they questioned how A. McClave got into WOU, told her everyone calls her "dogshit," and that no one knew why she was there. Peatross and Marlow required A. McClave to meet with them three times a week where they would tell her that she was "lazy" and "entitled."

64.

On or around November 2023, Peatross and Marlow encouraged plaintiff Noyes to stop taking anti-depressant medication because the coaches thought the medication was affecting her performance. During a game, Marlow pulled Noyes out and asked Noyes if she had taken her medication that day. This led Noyes to stop taking her necessary anti-depressant medication for approximately one week, which caused her physical symptoms.

PAGE 18 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

65.

On or around November 17, 2023, the coaches called A. McClave "lazy" and a "brat" during game to her teammates within earshot of A. McClave after defendants Marlow and Peatross pulled her out of a game and sat her on the bench.

66.

On or around December 2023, Defendants Peatross and Marlow pulled plaintiff A. McClave into a meeting where they said untrue things about Hopkins in an attempt to pit the two plaintiffs against each other.

67.

On or December 2023, Defendants Marlow and Peatross would tell A. McClave every day that she was a "brat," "lazy," and "the worst."

68.

On or around January 2024, plaintiff Hopkins was told by Defendants Marlow and Peatross to be more of an "asshole" to her teammates and that she needed to stop being so encouraging to them.

69.

Peatross and Marlow would body shame plaintiffs by telling the team that they needed to work on their bodies, comment on how they looked and weighed, and tell plaintiffs that they were too skinny or too short to compete against college girls, after the coaches forced them into extreme weight loss with punishing workouts.

/////

/////

/////

PAGE 19 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAPOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

**Prior Similar Abusive Coaching Tactics and Complaints at Salem University**

70.

Prior to coaching basketball at WOU, Peatross and Marlow previously coached basketball at Salem University during the 2022-2023 season. Players at Salem University experienced similar abusive coaching tactics from Peatross and Marlow, including but not limited to blatant disregard of NCAA rules, overexertion, exercise as punishment, verbal abuse and harassment, and retaliation for complaining.

**Retaliation by Coaches and Failure to Investigate by WOU**

71.

Plaintiffs made multiple complaints to WOU officials and received no help. Instead, Defendants Peatross and Marlow retaliated against plaintiffs for making complaints against them.

72.

On or around mid-September 2023, plaintiff Tu'ivai was injured, was sitting on the sidelines during practice and witnessed a lot of the coaches' abusive practices. Tu'ivai was very vocal about defending her teammates from the coaches' emotional and physical abuse. For health insurance reasons, Tu'ivai had to travel back and forth from Hawaii for medical treatment. During Christmas break, Tu'ivai had an issue with her flight returning from Hawaii. Despite constant contact with defendants Marlow and Peatross, they suspended her from the team upon her return.

/////

/////

/////

PAGE 20 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAPOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

73.

In or about November 2023, plaintiff Noyes's father called defendant Lydum, Executive Director of Intercollegiate Athletics, and reported the fact that the coaches had told Noyes to stop taking her anti-depressant medication. He received no response.

74.

On or around November 22, 2023, plaintiff C. McClave, acting as team captain and a representative for plaintiffs, met with Lydum and informed her of the abusive practices by defendants Marlow and Peatross as outlined in paragraphs 21 through 70 above. Lydum acknowledge that there were issues with Peatross and Marlow and stated that she was "sorry you have to deal with this," "the coaches will not be here next year," and "these coaches deceived us, and this is not what we wanted for the school." Lydum even joked with C. McClave that Lydum didn't have a great track record with hires, as she previously had to fire a soccer coach and volleyball coach for abuse. However, Lydum took no action to protect plaintiffs in response to C. McClave's complaint.

75.

On or about the same date, plaintiff Hopkins and her father also reported to Lydum the coaches' abusive coaching tactics, as alleged in paragraphs 21 through 70. Again, Lydum took no action to protect plaintiffs in response to Hopkins' complaint.

76.

On information and belief, defendant Lydum informed defendants Peatross and Marlow that plaintiffs on the team had made complaints against them and, on information and belief, informed them that those complaints came from plaintiffs Hopkins and C. McClave.

/////

PAGE 21 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

Exhibit A
Page 380 of 417

77.

As a result, later that day, on or around November 22, 2023, Peatross and Marlow called a team meeting. The meeting was approximately 75 minutes long. Peatross noted that were some "problems" on the team because some players were going to Lydum with complaints. The coaches told plaintiffs that they were being "dramatic" and were "tattletales." The coaches warned plaintiffs to never go over their heads again.

78.

On or about November 26, 2023, Florence Coriz, Ramos's mother, contacted Lydum to request a meeting for concerns she had about the women's basketball program at WOU, including, but not limited to the coaches' disparaging, condescending comments and how they were affecting her daughter's mental health, her daughter's injuries from excessive running, how her daughter was missing classes due to basketball practice and her grades were suffering, how Coach Peatross had left the student athletes at the airport in Los Angeles with no direction of where they were supposed to go, and concerns over supervision and responsibility over the student athletes while traveling out of state. Lydum never returned Ms. Coriz's emails or phone calls.

79.

On or about November 27, 2023, plaintiff C. McClave had a verbal conversation with Lydum and reported that she discovered that players on the Women's basketball team at Salem University also had experienced similar abusive coaching practices from Peatross and Marlow when they coached the team there. Instead of taking her report seriously, Lydum told C. McClave to stop talking to the Salem University women's basketball players.

/////

PAGE 22 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.payneclawpdx.com

KAFOURY & McDOUGAL
411 SW 2ⁿᵈ Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

80.

On or about November 29, 2023, Ms. Coriz contacted assistant Athletic Director, Justin Crosswhite, and informed him that plaintiffs were experiencing emotional abuse from Peatross and Marlow. Ms. Coriz also spoke to Peatross in person and expressed concern for her daughter's mental health as a result of Peatross's and Marlow's coaching tactics. After Ms. Coriz spoke with Peatross, plaintiff Ramos' playing time was significantly reduced and she got the silent treatment from Peatross. The coaches barely talked to Ramos again other than to criticize her.

81.

On or about February 7, 2024, Ms. Coriz and Ramos met with defendant Malissa Larson, Associate Vice President for Student Affairs and Dean of Students, for an hour and half about the same issues. Larson took notes during that meeting. Afterward, there was no response or attempt at resolution from Larson. After that, Ms. Coriz went to every away game because she didn't feel that her daughter was safe with the coaches.

82.

On or about December 4, 2023, plaintiff A. McClave met with Lydum in person and provided a three-page list of complaints and concerns on behalf of plaintiffs about defendants Peatross and Marlow, including but not limited to:

   a.   Plaintiffs did not want to be part of the women's basketball team anymore due to the treatment they were receiving;

   b.   Each day felt like they needed to stand up to a bully;

   c.   The environment was unhealthy;

   d.   Peatross lied about her professional background;

PAGE 23 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

e.      Plaintiffs were being punished for speaking up;

f.      Coaches Peatross and Marlow were verbally and mentally abusive;

g.      Plaintiffs were being called lazy and "dogshit;" and

h.      The abusive coaching practices were affecting plaintiffs' mental health and sanity.

83.

During the meeting on December 4, 2023, plaintiff A. McClave told Lydum that she was afraid that Coaches Peatross and Marlow were going to hurt her in retaliation for speaking up. Despite that Lydum had been informed that many of plaintiffs had suffered serious physical injuries due to the excessive and dangerous workouts, Lydum stated that plaintiffs had to be "physically hit for [Peatross and Marlow] to be fired," and she can't fire the coaches "for verbal, emotional or mental abuse."

84.

Defendants Peatross and Marlow made good on their warning to players not to go over their heads again. After the team meeting on or around November 22, 2023, their abusive coaching tactics escalated.

85.

On or about December 14, 2023, defendants Peatross and Marlow scheduled individual meetings with plaintiffs. Plaintiff A. McClave informed Lydum of the pending meetings and that she had a bad feeling there would be retaliation. As expected, the coaches lashed out at plaintiffs by berating, bullying, and verbally attacking them to the point where plaintiffs would cry. The coaches threatened to kick plaintiffs off the team if they stood up to the coaches. As a result of this threatening behavior, plaintiff A. McClave requested that Lydum have a school official present at all practices.

PAGE 24 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

86.

On or about February 1, 2024, plaintiff Hopkins was pulled into a meeting with Coaches Peatross and Marlow where they accused her of having a negative attitude and the coaches knew she had said bad things about them. The coaches told Hopkins that she wouldn't be playing if "she wasn't on their side." Following that conversation, Hopkins saw much less playing time and was pulled out of the starting lineup.

87.

On or about February 3, 2024, Coaches Peatross and Marlow brought plaintiff Baker into a meeting and told her that she was "uncoachable," disrespectful, and that her attitude was not acceptable. Baker felt threatened by the coaches' behavior and was afraid to speak up about anything to them for fear of further retaliation.

88.

The coaches' aggressive drills escalated after the reports in November and early December, and players became even more exhausted, causing more injuries. On or about December 18, 2023, while completing an aggressive full court drill, Arnold became over exhausted as a result of excessive exercise, which had gotten worse after the team made complaints. Arnold suffered a knee injury as a result during practice. The coaches never checked on Arnold after the injury. Arnold later had to have knee surgery as a result of this injury.

89.

On or about January 4, 2024, Marlow decided to scrimmage with the players. During a half-court scrimmage, plaintiff A. McClave was by the half-court line passing the ball back and forth with a teammate and she had her back turned to Marlow. On information and belief, Marlow intentionally rammed into A. McClave in the back when she was not looking. A.

PAGE 25 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  McClave slammed into the ground and reinjured her knee. All her teammates rushed over to her

2  in concern, but Marlow just laughed at her on the ground and expressed no concern whatsoever.

3  Instead, Coach Marlow screamed at A. McClave and as she limped off the court, yelled "what is

4  wrong with you, don't you even want to be here." Peatross also yelled at A. McClave and told

5  her to "get out" and go to the trainer.

6                                           90.

7       On or about the same day, A. McClave reported the incident to Lydum and reported that

8  she believed that Coach Marlow had intentionally injured her. A. McClave requested that Lydum

9  interview her teammates and obtain the practice video. Lydum failed to investigate Marlow's

10 intentional injury in a timely and reasonable manner.

11                                          91.

12      On or about January 5, 2024, plaintiff Tu'ivai's mother emailed Lydum to complain

13 about Tu'ivai's suspension, asserted that Tu'ivai's injury was due to the coaches' negligence and

14 unsafe coaching environment, and that Tu'ivai felt belittled and racially unaccepted. Lydum

15 failed to investigate Tu'ivai's mother's report in a timely and reasonable manner.

16                                          92.

17      On or about January 9, 2024, A. McClave met in person with Larson, to discuss the

18 complaints and reports plaintiffs made regarding the coaches' abusive tactics. Following the

19 meeting, Larson shared her concerns with Lydum. Lydum informed A. McClave that Larson and

20 Lydum would be working together to "address some of the concerns" that she shared. However,

21 neither Larson nor Lydum investigated A. McClave's reports in a timely and reasonable manner.

22 /////

23 /////

PAGE 26 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.payneclawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

93.

On or about January 13, 2024, all plaintiffs, via email to Lydum, requested an urgent

meeting to discuss Peatross and Marlow and their abusive coaching practices, their retaliatory

conduct, and the effect it was having on their mental health. Lydum initially declined to meet

with Plaintiffs in person as a group, because two players on the team who had not complained

about the coaches -- Youngblood and Pedrojetti -- were not included in the email chain.

However, Lydum ultimately agreed to meet with C. McClave and another player, Ally

Harman. Lydum stated that although the situation was bad, it wasn't bad enough for her to do

anything about it because no one had been "physically abused." This was even though several

plaintiffs had suffered physical injuries due to the coaches' abusive coaching tactics and that A.

McClave reported that she believed Coach Marlow had intentionally injured her.

94.

On or about January 15, 2024, A. McClave complained to Cori Metzgar, WOU's

Director of Sports Performance via email and stated that the team "really needs help right now"

and that "no adult is believing us with the abuse the coaches give us." Metzgar responded that

she was not sure how much she could do.

95.

On or about January 17, 2024, Hopkins complained to Lydum that the coaches were

making plaintiffs miss classes in violation of NCAA rules.

96.

On or about January 19, 2024. Hopkins complained to Lydum that defendants Peatross

and Marlow's behavior toward her made her think that they knew she had reported them to

Lydum. Hopkins asserted that she was experiencing retaliation from the coaches in the form of

PAGE 27 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    reduced playing time, pulling her out of games for no reason, and pitting her against her

2    teammates. Hopkins complained again about the abusive behavior toward her teammates. Lydum

3    failed to investigate Hopkins' reports in a timely and reasonable manner.

4                                           97.

5        On or about February 5, 2024, Hopkins complained to Lydum that ever since she first

6    met with Lydum, her playing time was reduced. Hopkins further informed Lydum that the

7    coaches had been retaliating in similar ways against other plaintiffs, including but not limited to

8    Ramos, Baker, and A. McClave. Hopkins expressed concern that the coaches were going to do

9    anything they could do to take her down. Lydum failed to investigate in a timely and reasonable

10   manner.

11                                          98.

12       On or about February 6, 2024, Ms. Coriz complained to Larson about the abusive

13   coaching tactics and the retaliation. Larson failed to investigate in a timely and reasonable

14   manner.

15                                          99.

16       On or about February 6, 2024, Hopkins' father, Glenn Hopkins, complained to Lydum

17   via email that all plaintiffs were mistreated, abused, neglected, and that he was extremely

18   concerned about his daughter's mental health, emotional health, and physical safety. Mr.

19   Hopkins described concerns that Coach Marlow was inserting himself into the practices and

20   scrimmages with plaintiffs, competing at 100% level versus plaintiffs, and talking down to them

21   constantly while doing so. Mr. Hopkins stated that A. McClave suffered a season ending injury.

22   Mr. Hopkins expressed concerns that Hopkins had a target on her back for making complaints

23   and was afraid Coach Marlow would intentionally hurt her, as he had done with A. McClave.

PAGE 28 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2ᴺᴰ Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    Mr. Hopkins also stated that his daughter was on the verge of a mental breakdown due to the

2    mental abuse and mind games that both coaches were engaging in. Mr. Hopkins specifically

3    requested that the coaches not be permitted to meet privately with his daughter anymore. Mr.

4    Hopkins did not receive a response.

5                                    100.

6         On or about February 12, 2024, Mr. Hopkins' concerns that his daughter had a target on

7    her back proved true. During practice on that day, Peatross and Marlow had plaintiffs doing

8    three-on-three drills for ten minutes at a times, and the losing teams would be forced to run

9    suicides and 4s. This resulted in plaintiffs running for nearly an hour. Peatross and Marlow were

10   taunting plaintiffs during this time, yelling at them "who really wants it" and "who actually

11   wants to work to win." A. McClave, who previously was injured by Coach Marlow, stood up for

12   her teammates and told the coaches that the amount of running was physically abusive. While

13   plaintiffs were running, Coach Peatross stood on the court in the middle of the running lane,

14   creating a tripping hazard. Hopkins was running in the lane and looking to get the basketball,

15   when she accidentally ran into Coach Peatross.

16                                   101.

17        Coach Peatross then stopped the practice and walked very quickly towards Hopkins.

18   Hopkins believed that Coach Peatross might hit her. Coach Peatross then accused Hopkins of

19   throwing her arm out and purposely running into her. Hopkins attempted to deny the allegation,

20   but Peatross would not let her speak. Coach Peatross screamed at Hopkins to get out. Hopkins

21   complied, walked out, and began to sob uncontrollably. Hopkins felt defeated, broken, and like

22   she had no voice. Hopkins felt afraid of Coach Peatross and sick to her stomach because she had

23   done nothing but run up the court.

PAGE 29 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

102.

Having observed what happened, some members of the team knew that Coach Peatross was falsely accusing Hopkins, and they became very upset. Ramos went to comfort Hopkins and to explain to Coach Peatross that Hopkins did not intentionally run into her. In response, the coaches began screaming and kicked Ramos out of practice. A. McClave began videoing what was going on, and Coach Marlow called WOU Public Safety officers on A. McClave. Coach Marlow screamed at A. McClave that he had "called the cops on her" and this made her very afraid. Public Safety Officers arrived and Coach Marlow had them escort A. McClave out of the gym. The coaches' behavior during this practice included instigating a physical altercation, falsely accusing Hopkins of assault, calling campus safety on A. McClave, screaming at Hopkins and A. McClave, and making plaintiffs fear for their own safety and well-being.

103.

On or about February 17, 2024, Peatross filed a false police report against Hopkins accusing Hopkins of "intentionally elbowing her" in the chest during the practice on or about February 12, 2024. Peatross claimed she had a hard time breathing, was light-headed, that the pain was a "10 out of 10," and was the "worst pain she ever experienced." Peatross also falsely reported that Hopkins assaulted her to the school administration.

104.

Despite multiple requests, WOU refused to provide a copy of the practice video from February 12, 2024 to Hopkins. However, after a Monmouth Police Officer was able to finally review the footage, he found that Peatross's reports to law enforcement were unsubstantiated.

/////

/////

PAGE 30 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

105.

As a result of Peatross's false police report and intentional misuse of police, Hopkins public reputation on campus was harmed, including with campus security, students, parents, campus staff, and boosters[6] around campus. A WOU booster told Hopkins' grandparents that the season ended because Hopkins "slammed into the coach." Hopkins' reputation has been severely affected by Peatross, causing Hopkins immense mental anguish, stress, and fear.

**In Response to Plaintiffs' Continued Complaints to WOU Officials,**

**WOU Officials Cancel their Season**

106.

On or about February 13, 2024, Ms. Coriz, contacted Crosswhite again to let him know that things were progressively getting worse, that Marlow made derogatory comments during practice, and that Marlow kicked Ramos out of practice merely for comforting Hopkins when Hopkins had been kicked out of practice, and falsely accused Hopkins of assaulting Peatross. Ms. Coriz requested an intervention.

107.

That same day, plaintiffs jointly submitted a detailed and extensive written document to WOU staff, including Larson, Dean of Students, Tina Fuchs, Vice-President of Student Affairs, Dominique Vargas, Executive Director of Diversity, Equity, and Inclusion, and Dave Haglund, GNAC commissioner. The document was titled "player testimony" and outlined the history of physical and emotional abuse that plaintiffs had endured by the coaches.

/////

---

[6] In this context, "boosters" refers to supporters or donors who often contribute time, resources, or money to support athletic programs. These individuals are typically fans, alumni, or community members.

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

108.

That same day, plaintiffs had an in-person meeting with Lydum and Metzgar regarding the incidents during practice on or about February 12, 2024 as alleged in paragraphs 100 through 105. Lydum informed plaintiffs that she was leaving town to go to Hawaii and that she was leaving Metzgar in charge. Lydum commented during this meeting that she knew that Larson knew about the complaints and the two of them had talked.

109.

On or about February 14, 2024, A. McClave provided Larson a six-page email asking for help for herself and her teammates. A. McClave outlined the abusive coaching practices, including ignoring plaintiffs' injuries, excessive running and conditioning, violating CARA hours, bullying, emotional abuse, and that Marlow intentionally injured her and caused a season-ending knee injury in retaliation for her speaking up about the abuse. A. McClave also explained that after the February 12, 2024, incident, she was kicked out of practice and Marlow called security to come and remove her. A. McClave stated that "this has been the most traumatizing experience, I would like a year of my eligibility back, I got that taken away from me."

110.

On or about February 14, 2024, Hopkins sent an email to Larson, Vargas, and Maria Bonifacio-Sample, Director of Student Conduct, with her written testimony about her experience that season.

111.

On or about February 14, 2024, Tu'ivai filled out an online student concern form regarding physical safety and mental wellness due to Peatross and Marlow's abusive coaching practices.

PAGE 32 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

112.

On or about February 15, 2024, C. McClave complained to Vargas, Bonifacio-Sample, Fuchs, and Larson regarding the use of excessive physical exercise punishment, inappropriate and abusive behavior by the coaches, and retaliation by the coaches in response to plaintiffs' complaints, and expressing disappointment in the lack of effort on behalf of WOU to protect plaintiffs.

113.

On or about February 15, 2024, without prior notice, while Lydum was in Hawaii, the entire team was called into a meeting with Michael Gonzalez, Administrative Program Specialist, Peatross, Marlow, and Larson. Although Lydum had left Metzgar in charge in her absence, Metzgar was not made aware of this meeting. Plaintiffs were then required to vote on a notecard whether they wanted to continue their season. Defendant Larson joked and sang jeopardy music while plaintiffs voted. This made plaintiffs feel like they were not being taken seriously. Plaintiffs voted to finish the season, but with different coaches who would not abuse them.

114.

Instead, WOU unilaterally terminated the 2023-2024 basketball season without plaintiffs' consent. On information and belief, this decision was made by defendants Peatross, Marlow, Lydum, Peters, and Larson, and/or ratified by defendants Larson, Lydum, and/or Peters.

115.

On or about February 15, 2024, Mr. Hopkins, provided an eight-page email to Peters, Fuchs, Larson, and Metzgar. The email summarized the majority of the abusive coaching tactics that plaintiffs had endured throughout the year, the complaints they had made, and asked the

PAGE 33 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   school to allow plaintiffs to finish the season without Peatross and Marlow. Mr. Hopkins offered

2   to coach the remainder of the season himself.

                                    116.

4        On or about February 16, 2024, Coriz contacted Lydum and expressed disappointment at

5   having her daughter's senior year cut short because of the behavior of defendants Peatross and

6   Marlow and emphasized that plaintiffs chose to finish the season with alternative resources.

7                                   117.

8        On or about February 17, 2024, A. and C. McClave's mother sent an email to Peters,

9   Crosswhite, Larson, Metzgar, and Lydum, again complaining about A. McClave's injury,

10  requesting film, stating that it was absolutely inappropriate to put plaintiffs in a room with their

11  abusers, and stating that Lydum should not be off in Hawaii while her players' season was being

12  ended due to serious physical and mental abuse. She specifically noted that "if this was the

13  men's team would she be allowed to be with another team in Hawaii? I doubt it!" She requested

14  that the Coaches be suspended and that plaintiffs be permitted to finish the season.

15                                  118.

16       Nonetheless, defendant WOU, through defendants Larson and Peters, informed the

17  university and the public that the remainder of the women's 2023-2024 basketball season had

18  been canceled, a decision they claimed was prompted by "team challenges for the program."

19                                  119.

20       Due to the failure of defendants WOU, by and through Lydum, Larson, and Peters, to

21  protect plaintiffs from ongoing abuse, and their decision instead to preemptively end plaintiffs'

22  basketball season, plaintiff Baker reasonably believed that she had no choice but to leave the

23

PAGE 34 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    team and enter the transfer portal and was therefore constructively discharged from the team. She

2    entered the transfer portal on or around late February 2024.

### WOU Conducts a Sham Investigation

3

4    120.

5    On or about February 18, 2024, nearly three months after plaintiffs first made complaints

6    about the abusive practices, WOU placed Peatross and Marlow on administrative paid leave

7    pending an investigation conducted by an external law firm, Littler Mendelson to determine

8    whether the coaches "jeopardized player safety."

9    121.

10    Out of the 12 students that made complaints, only four of them were interviewed – A.

11    McClave, C. McClave, Ramos, and Hopkins. The only other players that were interviewed were

12    Youngblood and Pedrojetti, the players that had not made any complaints against Peatross and

13    Marlow. Littler Mendelson also interviewed Peatross and Marlow. Littler did not interview any

14    other plaintiffs or players that made complaints of abusive practice, and did not interview any of

15    the players from Salem University who also had complained of abusive coaching practices.

16    122.

17    On information and belief, the investigation failed to review videos of practices,

18    including the February 12, 2024 practice. The investigator did not request videos, emails,

19    documents, or other recordings from plaintiffs.

20    123.

21    On information and belief, the investigation failed to look at the police report filed by

22    Peatross against Hopkins and failed to question the officer who took the report and investigated

23    the allegations in the report.

PAGE 35 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

124.

On information and belief, the investigation failed to look into Coach Peatross's background and the fact that she misrepresented her credentials, further impacting her veracity.

125.

On or about April 2, 2024, WOU announced that "following a comprehensive investigation, the allegations against the coaches were not sustained" and that both coaches would return to their regular duties and resume their roles as coaches of the women's basketball team. Despite multiple requests, the investigation, the findings, and the report have been withheld from plaintiffs and the public.

**Plaintiffs Continue to Make Complaints
and then are Terminated from the Team**

126.

After the coaches were reinstated, plaintiffs were heartbroken, shocked, and felt betrayed. Plaintiffs pleaded with Lydum and other school officials to fix their basketball program.

127.

On or about April 4, 2024, Dawkins met with Lydum to see what, if anything could be done. Lydum said there was not a lot that could be done given the investigator's findings.

128.

On or about April 4, 2024, Hopkins emailed members of the Board of Trustees and Lydum stating that the team felt betrayed that the university would reinstate the coaches and that the team would like to meet with everyone on the Board.

/////

/////

PAGE 36 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

129.

On or about April 10, 2024, A. McClave provided testimonies from plaintiffs to the board members informing them that no amount of "I'm sorry" can fix what plaintiffs endured. A. McClave stated that the Board was silencing athletes for complaining about abuse.

130.

On or about April 12, 2024, C. McClave emailed Betty Komp, Board Trustee, and Evan Source, Secretary of the Board of Trustees providing requested documentation regarding plaintiffs asking Randi Lydum to meet regarding the coaches. On or about April 12, 2024, A. McClave emailed members of the Board and Peters, requesting a meeting. On or about April 15, 2024, Peters replied confirming that he had read plaintiffs' testimonies and materials sent to the GNAC Commissioner, but that the investigation did not substantiate their allegations of player endangerment. Peters stated that "the coach will make decisions about the roster that best aligns with the future direction of the team."

131.

On or about April 13, 2024, C. McClave emailed Komp, Source, and Nair regarding the complaints.

132.

Instead of informing plaintiffs who made complaints against the coaches that their places on the team were not in jeopardy and that plaintiffs could not be retaliated against for their complaints, on or about April 2, 2024, Lydum gave defendant Peatross discretion as to whether to retain plaintiffs on the team for the 2024-2025 season and required plaintiffs to meet with Peatross to discuss their retention. Plaintiffs had never been required to have such a meeting in

PAGE 37 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   the past to request to remain on the team for the next season and that was not the standard

2   practice.

3                                    133.

4          Within the following week or so, Coaches Peatross and Marlow invited plaintiffs Baker,

5   Noyes, Arnold, Dawkins, Ramos, and Tu'ivai to meet with them to discuss returning to the team.

6   A. McClave and Hopkins, the only other plaintiffs with remaining eligibility, were not given the

7   option by Peatross and Marlow to meet with them to discuss returning to the team.

8                                    134.

9          Reasonable persons in plaintiffs' position would not put themselves in the position to

10  meet with their abusive coaches and ask to remain on a team where they would continue to be

11  subjected to that abuse. Plaintiffs Arnold and Tu'ivai did not meet with Peatross because they did

12  not feel that it was right to be forced to meet with their abusive coaches to "ask" to remain on the

13  team, something the plaintiffs had never been required to do before. Plaintiff Baker did not meet

14  with Peatross because she reasonably entered the transfer portal at a time when she could obtain

15  an athletic scholarship. Arnold, Tu'ivai, and Baker also learned that other plaintiffs who met with

16  Peatross were not being allowed to remain on the team, as alleged below in paragraph 135.

17                                   135.

18         Nonetheless, some plaintiffs felt they had no choice, because it was too late to enter the

19  transfer portal and have any real option of obtaining athletic scholarships, and they would need

20  to remain on the WOU basketball team to maintain their athletic scholarships. On or about April

21  11, 2024, Noyes met with Peatross and informed Peatross that she could not afford to lose her

22  athletic scholarship and needed to remain on the team. Coach Peatross told Noyes that she was

23

PAGE 38 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   not "good for their culture." In or around April 2024, Dawkins also met with Peatross and was

2   told she would not be allowed to remain on the team for similar reasons.

3                                              136.

4          As was foreseeable, defendant Peatross did not allow any plaintiff or any other player

5   who made complaints about her to remain on the team for the 2024-2025 season. Defendant

6   Peatross only allowed two players to remain on the team –Youngblood and Pedrojetti – the two

7   players who did not make complaints against the coaches. All 12 remaining players, absent those

8   with no remaining eligibility, were either constructively discharged or directly terminated from

9   the team, including plaintiffs Arnold, Baker, Dawkins, Hopkins, A. McClave, Noyes, and

10  Tu'ivai.

11                                             137.

12         The coaches then changed the locker room code, which restricted all plaintiffs from using

13  the basketballs and tried to kick them out of the weight room.

14                                             138.

15         On or about April 23, 2024, every plaintiff with remaining athletic eligibility, Arnold,

16  Baker, Dawkins, Hopkins, A. McClave, Noyes, and Tu'ivai had their athletic scholarships

17  withdrawn by the WOU financial aid office due to their "separation from the team."

18                                             139.

19         On or about April 27, 2024, Hopkins complained to Crosswhite, Peters, and the WOU

20  financial aid office that she was not given the opportunity to have a reinstatement meeting with

21  the coaches and requested a copy of WOU's retaliation policy.

22  /////

23  /////

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAPOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

140.

On or about that same day, Noyes' mother contacted Lydum and requested her to make things right after Noyes was kicked off the team. Lydum did not respond.

141.

On or about that same day, plaintiff Hopkins' father also contacted the Board of Trustees about WOU revoking players' scholarships and received no response.

**INJURY**

142.

The coaches and WOU's unlawful conduct had a profound effect on plaintiffs emotionally. Some plaintiffs would go home exhausted emotionally, physically, and mentally.

143.

The physical abuse also led to social isolation. Plaintiffs socially withdrew from their friends because they were too tired to hang out, participate in any social outing because they felt too drained, and stopped going home to visit their parents.

144.

The over-exhaustion and physical punishment also led to other physical manifestations and symptoms such as weight loss, lack of sleep, hair loss, and eating disorders.

145.

Arnold is staying at WOU. She has three years of eligibility remaining, but because she was terminated from the team, she cannot play basketball while at WOU. Arnold had an $8,000 athletic scholarship, which was withdrawn by WOU after she was terminated from the team. She also incurred $14,505 in medical expenses due to her knee injury and surgery.

/////

PAGE 40 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

146.

Defendants' conduct has caused plaintiff Arnold economic damages in an amount to be determined at trial, but currently estimated to be $22,505 for loss of her scholarship and medical expenses.

147.

Arnold lost 10-15 pounds from the excessive running and not being able to eat proper meals, as well as due to her anxiety. Arnold was exhausted the entire season – emotionally, physically, and mentally. She would come home from practice and lay on the floor for hours unable to move. She called her parents and cried while telling them how exhausted she felt in every aspect of her life. Although Arnold has three years of eligibility remaining, the treatment from these coaches has driven her to the point where she does not want to pick up a basketball ever again. Countless hours in the gym, years of club basketball, and huge tournaments, missed dances, and huge sacrifices her and her family made all seem like it was for nothing. Her mental health has extremely suffered from repeatedly seeking help but not being taken seriously. Stepping away from basketball – her first love – is devastating. Giving up basketball, a huge part of her life, simply because she spoke up, is crushing to her spirit. She has lost her identity as an athlete and is struggling to transition form an athlete to normal life.

148.

Defendants' conduct has caused plaintiff Arnold noneconomic damages in an amount to be determined at trial, but estimated to be $3,000,000.

149.

Baker was a redshirt freshman with three years of eligibility left. Baker had a $6,000 athletic scholarship, which she lost when defendants failed to protect her from abuse, retaliated

PAGE 41 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   against her, and constructively discharged her from the team, causing her to transfer to another

2   university. Baker will be playing basketball at the University of Mount Saint Vincent this fall,

3   where she will be paying more in tuition. The difference in tuition is $29,964 per year.  She has

4   also had mental health counseling as a result of defendants' actions and has incurred counseling

5   expenses in an estimated amount of $2,400 and will incur future counseling costs.

150.

6

7   Defendants' conduct has caused plaintiff Baker economic damages in an amount to be

8   determined at trial, but currently estimated to be $91,992, in the form of the loss of scholarship

9   and/or increased tuition, as well as future counseling costs in an amount to be determined.

151.

10

11   Playing basketball at WOU was a dark spot on Baker's basketball career. Peatross and

12   Marlow took away her confidence, her voice, and what she loves most – basketball. Baker

13   learned from Coaches Peatross and Marlow the person she never wants to be – and that is the

14   coaches she had at WOU. Baker lost 15 pounds due to excessive exercise and her inability to eat

15   due to anxiety. Baker was too exhausted and drained to go to class, do schoolwork, and would

16   cram for everything at the last minute when there were deadlines. Baker developed severe

17   anxiety due to the extreme physical, verbal, and emotional distress the coaches placed on her

18   during the season. She suffered from severe panic attacks. Baker lost contact with her friends

19   because she was too exhausted to reach out and too sad to continue talking to many of her

20   friends. She isolated herself in her room and felt like nobody understood how hard it was for her.

152.

21

22   Defendants' conduct has caused plaintiff Baker noneconomic damages in an amount to

23   be determined at trial, but estimated to be $3,000,000.

PAGE 42 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

153.

Dawkins was a redshirt sophomore with two years of eligibility remaining. Dawkins has transferred to Northern Illinois University, where she will be playing basketball in the fall. Dawkins experienced significant emotional distress due to the coaches' abusive tactics and retaliatory conduct. She lost 15 pounds due to stress and overexertion, suffered hair loss, and developed an eating disorder from which she still suffers. Defendants' conduct caused Dawkins anxiety, depression, and social isolation. Because trusted adults harmed her and failed to protect her, she also has difficulty trusting others. Although she is able to play basketball at a new school, Dawkins is now thousands of miles away from home and away from her support system, further suffering from isolation and depression. Dawkins is in the process of getting into mental health counseling and will incur counseling expenses as a result of defendants' actions.

154.

Defendants' conduct has caused plaintiff Dawkins economic damages in an amount to be determined at trial.

155.

Defendants' conduct has caused plaintiff Dawkins noneconomic damages in an amount to be determined at trial but estimated to be $3,000,000.

156.

Hopkins was a freshman guard with three years of eligibility remaining. She had an athletic scholarship for $6,000, which was withdrawn when she was terminated from the team. Hopkins is transferring to George Fox University, where she was unable to obtain an athletic scholarship because of the late entry into the portal. She will pay approximately $25,000 more per year in tuition for the next three years and is incurring commuting costs of approximately

PAGE 43 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   $5,000 per year.  She has also had mental health counseling as a result of defendants' actions and

2   will have counseling in the future.

3                                    157.

4        Defendants' conduct has caused plaintiff Hopkins economic damages in an amount to be

5   determined at trial but currently estimated to be $96,000, in the form of loss of scholarships,

6   and/or the cost of increased tuition, as well as future counseling expenses in an amount to be

7   determined.

8                                    158.

9        Hopkins lost 10 pounds from excessive running. Hopkins lost sleep due to anxiety over

10  what would happen the next day, and her school year was consumed with pain and heartache.

11  Hopkins was on the phone with her parents for hours to help her get through the hours after the

12  abusive practices. In addition, Hopkins suffered serious reputational harm and anxiety due to

13  Peatross' slanderous and false police report and misrepresentations about her to the police and to

14  campus personnel. Hopkins felt helpless and alone. She also fears how Peatross' false report and

15  lies about her character will continue to affect her future. She has lost all trust in adults and a

16  system that was supposed to protect her, but instead retaliated against her, protected her abusers,

17  and took her basketball career away from her.

18                                   159.

19       Defendants' conduct has caused plaintiff Hopkins noneconomic damages in an amount to

20  be determined at trial but estimated to be $4,000,000.

21                                   160.

22       A. McClave was a junior guard with one year of eligibility remaining. A. McClave

23  suffered a serious knee injury due to the intentional injury caused by Coach Marlow. She has

PAGE 44 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1   medical bills that, to date, are estimated at $22,000.00. She also had an athletic scholarship for

2   $10,000, which was withdrawn after she was terminated from the team. A. McClave is staying at

3   WOU for her senior year, which is the best decision for her academically. However, because she

4   was terminated from the team, she cannot play basketball. A. McClave has also had mental

5   health counseling as a result of defendants' actions, with counseling bills currently estimated at

6   $2,280.

7                                           161.

8           Defendants' conduct has caused plaintiff A. McClave economic damages in an amount to

9   be determined at trial but currently estimated to be in excess of $34,280, in the form of past and

10  future medical and counseling expenses, and lost tuition and scholarships.

11                                          162.

12          Defendants' conduct has caused A. McClave serious emotional distress. A. McClave

13  suffered from depression, anxiety, humiliation, stress, and constant fear. She cried nearly every

14  day of the season. Her self-esteem suffered due to the bullying and retaliation she experienced

15  from the coaches. There were points in the season where she thought about quitting, harming

16  herself and even struggled with suicidal ideation. She suffered from panic attacks, would shake,

17  and couldn't breathe. Her anxiety was so bad that she would struggled to keep her food down

18  without vomiting. Her coaches' comments about her body triggered negative body images about

19  herself. She lost approximately 22 pounds. She would sleep nearly all day outside of practice.

20  She lost nearly all enjoyment in life. She withdrew from her friends and social life and became

21  extremely isolated. She felt it was the darkest time in her life. A. McClave really struggled in

22  school and was constantly emailing professors to ask for extensions. A. McClave has been

23

PAGE 45 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  stripped of the one thing in life that made her feel most like herself. She grieves the loss of

2  basketball and all it meant to her.

3                                    163.

4      Defendants' conduct has caused plaintiff A. McClave noneconomic damages in an

5  amount to be determined at trial but estimated to be $3,000,000.

6                                    164.

7      Defendants' conduct has caused C. McClave serious emotional harm. C. McClave was a

8  fifth-year senior guard during the 2023-2024 season with no remaining eligibility. Despite the

9  early termination of the season, C. McClave was name All-GNAC Honorable Mention, finishing

10  the season fourth in the conference in scoring at 17.0 PPG,[1] tenth in assists, second in steals, and

11  fifth in minutes per game.[2] Because of the cancellation of the season, C. McClave lost out on the

12  opportunity to obtain higher honors of first team or a chance at player of the year in the

13  conference. C. McClave has no remaining eligibility left, and defendants robbed her of her

14  experience of her last year of basketball. C. McClave was so stressed during the season that she

15  would get sick to her stomach, be riddled with anxiety, would wake up at 3:00 AM, and not be

16  able to get back to sleep. C. McClave became extremely depressed, feeling that she had confided

17  to trusted adults without anyone helping. C. McClave was defeated, tired, and stressed due to the

18  coaches' abusive tactics, their retaliatory conduct, and WOU officials' failure to correct it.

19  /////

20  /////

21

22  _____

23  [1] PPG refers to an average Points Per Game.
    [2] FG refers to Field Goal Percentage, which measures the success rate of a player's field goals.
    Field goals include any two-point, or three-point shots taken during live play.

PAGE 46 – COMPLAINT          Shenoa Payne Attorney at Law PC          KAFOURY & McDOUGAL
                                       1500 SW First Ave, Ste 1000              411 SW 2nd Ave, Ste 200
                                       Portland, OR 97201                        Portland, OR 97204
                                       Tel: (503) 914-2500                       Fax: 503-224-2673
                                       www.paynelawpdx.com                       Phone: 503-224-2647

Exhibit A
Page 405 of 417

165.

Defendants' conduct has caused plaintiff C. McClave noneconomic damages in an amount to be determined at trial, but estimated to be $3,000,000.

166.

Noyes was a junior forward with one year of eligibility remaining. Noyes had an athletic scholarship worth $12,000, which WOU withdrew after it terminated her from the team. Noyes is staying at WOU, which is the best decision for her academically. However, because she was terminated from the team, she cannot continue to play basketball.

167.

Defendants' conduct has caused plaintiff Noyes economic damages in an amount to be determined at trial but currently estimated to be $12,000 for her lost scholarship.

168.

Noyes lost 15 pounds due to excessive cardio exercise and not refueling her body properly as a result of exhaustion and anxiety. Noyes complained to her professors through the school year, requiring extensions on assignments because basketball was taking all of her energy, and she was struggling. Despite her professors being accommodating, Noyes stopped attending class most of the winter quarter and part of the spring quarter because she was extremely stressed. She dropped one class in the spring because she was going to fail, and Noyes was forced to turn in poorly done assignments because she lacked the mental capacity to do a good job. Going through the season had a profound effect on Noyes' mental health. It was the most toxic, uncomfortable, and degrading environment that she had ever experienced in her entire basketball career. Noyes was filled with such anxiety about what would happen at practice the next day she would throw up and not be able to sleep nights, knowing plaintiffs would have to

PAGE 47 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    run the next day for punishment. She cried after practice weekly and became extremely

2    depressed. Noyes regretted transferring to WOU and felt trapped because she couldn't afford to

3    lose her scholarship. She contemplated suicide mid-season because she felt so suffocated and

4    miserable, but knew she had to stay. Noyes felt she had no control over her life and wanted to

5    take back her power. These thoughts overcame her as the season started to get progressively

6    worse. After Noyes was terminated from the team, she was reported to the WOU's counseling

7    center twice as a student of concern that might self-harm. Noyes shut down and would become

8    short with her family and friends. She withdrew from everyone who wasn't on the team because

9    nobody else could understand the toll it was taking on her and it led to a break-up with her

10   significant other. Losing the sport that she worked for her whole life is extremely painful to

11   Noyes and breaks her hearts. She feels she has lost a piece of her core and identity.

12                                         169.

13        Defendants' conduct has caused plaintiff Noyes noneconomic damages in an amount to

14   be determined at trial but estimated to be $3,000,000.

15                                         170.

16        Ramos was a junior guard with one year of eligibility remaining. Ramos lost 15-20

17   pounds and has trouble sleeping due to stress and anxiety, and Ramos was getting hives and had

18   to take Benadryl for sleep almost every night because of stress. Ramos sustained a concussion

19   during one of the "kill or be killed" practices. Ramos' schoolwork suffered; she started to do

20   poorly on assignments and fell behind in school. Ramos called her mother nearly every night,

21   telling her that she couldn't take it anymore. Ramos found herself taking her emotions out on her

22   family and friends and isolated herself from her friends and often stayed in her room. Ramos is

23   taking a year off from the university because she needs a break from the emotional stress of the

PAGE 48 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  last year. Ramos is unsure whether she will return to basketball after the negative and toxic

2  experiences she had at Western Oregon University. Ramos is extremely upset because she

3  recognizes as a young Native American woman, playing basketball was dream that not a lot of

4  kids in her culture get to realize.

5                                         171.

6      Defendants' conduct has caused plaintiff Ramos noneconomic damages in an amount to

7  be determined at trial but estimated to be $3,000,000.

8                                         172.

9      Tu'ivai was a sophomore forward with two years of eligibility left. Due to a season

10  ending injury as a result of the physical abuse perpetuated by Peatross and Marlow, Tu'ivai did

11  not play any games during the 2023-2024 season. After Tu'ivai was terminated from the team,

12  her $10,000 athletic scholarship was withdrawn, and she has two years of eligibility remaining.

13  Basketball was Tu'ivai's life, escape, and a way of channeling her emotions. Tu'ivai has tried

14  overcoming her injury but has been unable to and may never play basketball again. Defendants'

15  conduct has caused Tu'ivai significant emotional distress. She cried every night because of how

16  sore her body was before she got injured, and because of her injury, suspension, and abuse from

17  the coaches. During her suspension, Tu'ivai missed critical parts of team bonding, suffered from

18  social isolation, fell into a deep depression with thoughts of suicide, her grades suffered, and she

19  was too afraid to talk to anyone about it. Tu'ivai lost the love of the game because Peatross and

20  Marlow made the sport more anxiety driven and less lovable and enjoyable. Basketball was

21  Tu'ivai's love and her escape – a way of letting out her anger and her emotion. She grew up

22  playing with her sisters, and she feels that defendants took that from her. The abusive tactics

23  affected her mental health, and no one listened to them and it just got worse. She suffered from

PAGE 49 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  depression and anxiety, lack of sleep, social isolation, loss of enjoyment of life, and suicidal

2  ideation. Her school work suffered tremendously and her grades suffered as a result.

3             173.

4      Defendants' conduct has caused plaintiff Tu'ivai economic damages in an amount to be

5  determined at trial.

6             174.

7      Defendants' conduct has caused plaintiff Tu'ivai noneconomic damages in an amount to

8  be determined at trial but estimated to be $3,000,000.

9             175.

10      Plaintiffs have mitigated their damages.

11      **FIRST CLAIM FOR RELIEF**

12      **42 U.S.C. § 1983 – Speech and Petition Clause**
    **On Behalf of All Plaintiffs**

13      **Against Defendants Peatross, Marlow, Lydum, Larson, and Peters**

14             176.

15      Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

16             177.

17      Defendants were at all relevant times acting under the color of state law.

18             178.

19      Plaintiffs' complaints constituted Constitutionally protected activities of speech and/or

20  petitioning the Government.

21             179.

22      Defendants punished and/or otherwise retaliated against plaintiffs for reporting,

23  opposing, and speaking out against ongoing abusive coaching tactics by taking actions against

PAGE 50 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  plaintiffs that would lead ordinary student athletes in plaintiffs' position to refrain from

2  complaining about abusive coaches in order to remain on the team.

3                                    180.

4       Plaintiffs' protected constitutional activity was a substantial or motivating factor in

5  defendants' adverse and retaliatory actions toward plaintiffs.

6                                    181.

7       It is clearly established law that school officials may not retaliate against student-athletes

8  based on their protected speech.

9                                    182.

10      It is clearly established law that protected speech includes complaints and reports to a

11  university about an abusive coach.

12                                   183.

13      Defendants' conduct has caused plaintiffs economic and noneconomic damages.

14                                   184.

15      Plaintiffs are entitled to attorney fees, costs, and disbursements pursuant to 42 U.S.C. §

16  1988(b).

17                          **SECOND CLAIM FOR RELIEF**

18                   **Intentional Infliction of Emotional Distress**
                            **On Behalf of All Plaintiffs**
19              **Against Defendants WOU, Peatross, and Marlow**

20                                   185.

21      Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

22  /////

23  /////

PAGE 51 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1            186.

2            From January 3, 2024, until the season ended on February 12, 2024, defendants Peatross

3    and Marlow, intended to cause plaintiffs severe emotional distress.

4            187.

5            Defendants did in fact cause plaintiffs severe emotional distress.

6            188.

7            Defendants' conduct was an extraordinary transgression of the bounds of socially

8    tolerable behavior.

9            189.

10           Peatross made an intentionally false and outrageous claim to the police and WOU

11   officials that Hopkins assaulted her and caused her serious injury, knowing it was false and

12   lacking any reasonable grounds to believe the accusation as true.

13           190.

14           Defendants Peatross and Marlow were at all times acting within the course and scope of

15   their employment for defendant WOU and WOU is vicariously liable for their actions. Plaintiffs

16   also maintain this action against Peatross and Marlow individually pursuant to ORS 30.265(4).

17           191.

18           Defendants' conduct has caused plaintiffs economic and noneconomic damages.

19   /////

20   /////

21   /////

22   /////

23   /////

PAGE 52 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAPOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

## THIRD CLAIM FOR RELIEF

### Use of Police with Intent to Harm
### ORS 30.845

### On Behalf of Plaintiff Hopkins
### Against Defendants WOU and Jessica Peatross

192.

Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

193.

On or about February 12, 2024, Defendant Peatross knowingly caused a police officer to arrive at the WOU campus in Monmouth to contact plaintiff Hopkins.

194.

Defendant Peatross acted with the intent to cause Plaintiff Hopkins to feel harassed, humiliated or embarrassed, and/or damage her reputation or standing within the WOU community and/or the community at large.

195.

Defendant Peatross was at all times acting within the course and scope of her employment for defendant WOU and WOU is vicariously liable for her actions. Plaintiff Hopkins also maintains this action against defendant Peatross individually pursuant to ORS 30.265(4).

196.

Defendants' conduct was a but-for cause of plaintiff Hopkins's harm.

197.

Plaintiff Hopkins is entitled to emotional distress damages or a minimum of statutory damages in the amount of $250.

PAGE 53 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

198.

Plaintiff is entitled to attorney fees, costs, and disbursements pursuant to ORS 30.845.

**THIRD CLAIM FOR RELIEF**

**Negligence**
**On Behalf of All Plaintiffs**
**Against Defendants WOU, Peatross, and Marlow**

199.

Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

200.

Defendants Peatross and Marlow had a duty to act with reasonable care to not expose plaintiffs to a foreseeable risk of harm.

201.

From January 3, 2024, to February 12, 2024, Peatross and Marlow were negligent in multiple ways, including but not limited to the following:

a.    Failing to take reasonable steps to ensure the physical health and safety of plaintiffs.

b.    Failing to take reasonable steps to avoid physically injuring plaintiffs.

c.    Making physical contact with plaintiffs in a way that was not reasonable under the circumstances.

d.    Requiring plaintiffs to engage in physical activity that was not reasonable under the circumstances.

e.    Holding unreasonable practices in length and number.

f.    Organizing workouts at times that were not reasonable under the circumstances.

g.    Using physical workouts, running, and practices as punishment.

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAPOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    h.    Endangering plaintiffs needlessly.

2    i.    Violating NCAA Bylaw 17.1.6., which defendants knew or should have known

3          about by allowing or requiring the players to engage in excessive, and

4          unreasonably lengthy, practices and using physical activity as punishment.

5                                          202.

6    Defendants' negligence was the but-for cause of plaintiffs' physical injuries.

7                                          203.

8    Defendants Peatross and Marlow were at all times acting within the course and scope of

9    their employment for defendant WOU and WOU is vicariously liable for their actions. Plaintiffs

10   also maintain this action against Peatross and Marlow individually pursuant to ORS 30.265(4).

11                                         204.

12   Defendants' conduct has caused plaintiffs economic and noneconomic damages.

13                            **FOURTH CLAIM FOR RELIEF**

14                          **Negligent Retention and Supervision**
                                **On Behalf of All Plaintiffs**
15                                  **Against WOU**

16                                         205.

17   Plaintiffs reallege paragraphs 1 through 175 as though set forth herein.

18                                         206.

19   Beginning on November 22, 2023, defendant WOU, by or through its agents knew

20   plaintiffs were subjected to unlawful abuse.

21                                         207.

22   WOU is directly liable for its own negligence. WOU had an obligation and duty to

23   exercise reasonable care to protect its collegiate athletes against excessive practices, bullying,

PAGE 55 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1  dehydration, forced practicing while ill, disregarding of injuries, and other serious and

2  foreseeable risks to plaintiffs' health and safety.

3                                    208.

4       Beginning on January 3, 2024, WOU was negligent in retaining Peatross and Marlow by

5  failing to conduct a reasonable due diligence investigation upon receiving complaints and being

6  made aware that Peatross and Marlow engaged in abusive coaching tactics resulting in physical

7  and mental injuries to players at WOU, prior abuse at Salem University, and had lied on their

8  resumes and lacked requisite qualifications.

9                                    209.

10      Had WOU conducted a reasonable due diligence investigation, WOU would have

11  discovered that Peatross and Marlow were not qualified for retention, and that the coaches had a

12  pattern of abuse against players on their team, and that there was a foreseeable risk of harm to

13  plaintiffs.

14                                    210.

15      WOU failed to reasonably supervise Peatross and Marlow, despite several complaints of

16  verbal, physical, and mental abuse and retained the coaches even after being made aware of the

17  actions of their abusive conduct.

18                                    211.

19      WOU failed to act reasonably in its investigation of the abuse and negligently retained

20  Coaches Peatross and Marlow in light of the knowledge it had obtained from plaintiffs and their

21  parents.

22  /////

23  /////

PAGE 56 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdy.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

212.

WOU failed to be responsive and instead negligently failed to protect their collegiate athletes from abuse, neglect, or other forms of maltreatment.

213.

Defendants' negligent supervision and retention was a but-for cause of plaintiff's harm and plaintiffs are entitled to economic and noneconomic damages.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court provide trial by jury and award the following relief:

1.    An order applicable to plaintiffs still attending WOU that:

    a.    Requires defendant WOU to reinstate plaintiffs who have not transferred to other teams and who have remaining eligibility to the WOU basketball team;

    b.    Requires defendant WOU to immediately terminate Peatross's and Marlow's employment;

    c.    Requires defendant WOU to implement comprehensive training on the prevention of abuse, harassment, and retaliation for all coaching staff and athletic department employees;

    d.    Requires defendant WOU to appoint an independent monitor to oversee the athletics department to ensure compliance with player safety for a period of two years;

    e.    Requires defendant WOU to allow the independent monitor to conduct a thorough investigation and report the findings to the Oregon Department

PAGE 57 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

1    of Education and the NCAA to ensure that all policies and procedures are

2    revised to prevent future occurrences of abuse by coaches and retaliation

3    for reports of abuse by coaches;

4        f.    Requires defendant WOU to provide counseling and support services to

5    current and former players by the abusive conduct;

6        g.    Requires defendant WOU to establish a confidential reporting system for

7    players to report abuse, harassment, or other misconduct without the fear

8    of retaliation;

9    2.    Economic damages in the amount of $256,777 for all claims;

10   3.    Noneconomic damages in the amount of $28,000,000 for all claims;

11   4.    On Plaintiff's First and Third Claims for Relief, an award of reasonable attorneys'

12   fees, costs and disbursements;

13   5.    An award of prejudgment interest on all damages at the highest rate allowed by

14   law; and

15   6.    Grant such other and further relief as the Court deems just and equitable.

16   DATED this 29th day of January, 2025.

17   SHENOA PAYNE ATTORNEY AT LAW PC    KAFOURY & MCDOUGAL

18

19   /s/ Shenoa Payne                    /s/ Jason Kafoury
     Shenoa Payne, OSB No 084392     Jason Kafoury, OSB #091200

20   spayne@paynelawpdx.com         jkafoury@kafourymcdougal.com
     Attorney for Plaintiffs            Attorney for Plaintiffs

21

22       Plaintiffs hereby provide notice of their intent to amend to include a claim for punitive
     damages on Plaintiffs' First Claim for Relief.

23

PAGE 58 – COMPLAINT

Shenoa Payne Attorney at Law PC
1500 SW First Ave, Ste 1000
Portland, OR 97201
Tel: (503) 914-2500
www.paynelawpdx.com

KAFOURY & McDOUGAL
411 SW 2nd Ave, Ste 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647